**JORDAN MARSH COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REV-ENUE, Respondent.**

No. 68, Docket 25195.

United States Court of Appeals
Second Circuit.

October Term, 1958.
Argued Nov. 14, 1958.
Decided Aug. 13, 1959.

Percy W. Phillips, Washington, D. C. (Ivins, Phillips & Barker, Washington, D. C., on the brief), for petitioner.

Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C. (Andrew F. Oehmann, Acting Asst. Atty. Gen., and Lee A. Jackson and Joseph F. Goetten, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before HINCKS, LUMBARD and MOORE, Circuit Judges.

HINCKS, Circuit Judge.

This is a petition to review an order of the Tax Court, which upheld the Commissioner's deficiency assessment of $2,-101,823.39 in income and excess profits tax against the petitioner, Jordan Marsh Company. There is no dispute as to the facts, which were stipulated before the Tax Court and which are set forth in substance below.

The transactions giving rise to the dispute were conveyances by the petitioner in 1944 of the fee of two parcels of prop-

erty in the city of Boston where the petitioner, then as now, operated a department store. In return for its conveyances the petitioner received $2,300,000 in cash which, concededly, represented the fair market value of the properties. The conveyances were unconditional, without provision of any option to repurchase. At the same time, the petitioner received back from the vendees leases of the same properties for terms of 30 years and 3 days, with options to renew for another 30 years if the petitioner-lessee should erect new buildings thereon. The vendees were in no way connected with the petitioner. The rentals to be paid under the leases concededly were full and normal rentals so that the leasehold interests which devolved upon the petitioner were of no capital value.

In its return for 1944, the petitioner, claiming the transaction was a sale under § 112(a), Internal Revenue Code of 1939,[1] sought to deduct from income the difference between the adjusted basis of the property and the cash received. The Commissioner disallowed the deduction, taking the position that the transaction represented an exchange of property for other property of like kind. Under Section 112(b)(1) such exchanges are not occasions for the recognition of gain or loss; and even the receipt of cash or other property in the exchange of the properties of like kind is not enough to permit the taxpayer to recognize loss. Section 112(e).[2] Thus the Commissioner viewed the transaction, in substance, as an exchange of a fee interest for a long term lease, justifying his position by Treasury Regulation 111, § 29.112(b)(1)–1, which provides that a leasehold of more than 30 years is the equivalent of a fee interest.[3] Accordingly the Com-

1. "§ 112. *Recognition of gain or loss—* "(a) *General rule.* Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section." 26 U.S.C.A. § 112.

2. "§ 112. *Recognition of gain or loss—*
\* \* \* \* \*
"(b) *Exchanges solely in kind—(1) Property held for productive use or investment.* No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.
\* \* \* \* \*
"(e) *Loss from exchanges not solely in kind.* If an exchange would be within the provisions of subsection (b) (1) to (5), inclusive, or (10), or within the provisions of subsection (1), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized."

3. "Reg. 111, Sec. 29.112(b) (1)–1. *Property Held for Productive Use in Trade or Business or for Investment.—*As used in section 112(b) (1), the words 'like kind' have reference to the nature or character of the property and not to its grade or quality. One kind or class of property may not, under such section, be exchanged for property of a different kind or class. The fact that any real estate involved is improved or unimproved is not material, for such fact relates only to the grade or quality of the property and not to its kind or class. Unproductive real estate held by one other than a dealer for future use or future realization of the increment in value is held for investment and not primarily for sale.
"No gain or loss is recognized if (1) a taxpayer exchanges property held for productive use in his trade or business, together with cash, for other property of like kind for the same use, such as a truck for a new truck or a passenger automobile for a new passenger automobile to be used for a like purpose, or (2) a taxpayer who is not a dealer in real estate exchanges city real estate for a ranch or farm, or a leasehold of a fee with 30 years or more to run for real estate, or improved real estate, or (3) a taxpayer exchanges investment property and cash for investment property of a like kind."

missioner made the deficiency assessment stated above. The Tax Court upheld the Commissioner's determination. Since the return was filed in New York, the case comes here for review. 26 U.S.C.A. § 7482.

Upon this appeal, we must decide whether the transaction in question here was a sale or an exchange of property for other property of like kind within the meaning of §§ 112(b) and 112(e) of the Internal Revenue Code cited above. If we should find that it is an exchange, we would then have to decide whether the Commissioner's regulation, declaring that a leasehold of property of 30 years or more is property "of like kind" to the fee in the same property, is a reasonable gloss to put upon the words of the statute. The judge in the Tax Court felt that Century Electric Co. v. Commissioner of Internal Rev., 8 Cir., 192 F.2d 155, certiorari denied 342 U.S. 954, 72 S.Ct. 625, 96 L.Ed. 708, affirming 15 T.C. 581, was dispositive of both questions. In the view which we take of the first question, we do not have to pass upon the second question. For we hold that the transaction here was a sale and not an exchange.

The controversy centers around the purposes of Congress in enacting § 112 (b), dealing with non-taxable exchanges. The section represents an exception to the general rule, stated in § 112(e), that upon the sale or exchange of property the entire amount of gain or loss is to be recognized by the taxpayer. The first Congressional attempt to make certain exchanges of this kind non-taxable occurred in Section 202(c), Revenue Act of 1921, c. 135, 42 Stat. 227. Under this section, no gain or loss was recognized from an exchange of property unless the property received in exchange had a "readily realizable market value." In 1924, this section was amended to the form in which it is applicable here. Discussing the old section the House Committee observed:

"The provision is so indefinite that it cannot be applied with ac-

curacy or with consistency. It appears best to provide generally that gain or loss is recognized from all exchanges, and then except specifically and in definite terms those cases of exchanges in which it is not desired to tax the gain or allow the loss. This results in definiteness and accuracy and enables a taxpayer to determine prior to the consummation of a given transaction the tax liability that will result." (Committee Reports on Rev.Act of 1924, reprinted in Int.Rev.Cum.Bull. 1939–1 (Part 2), p. 250.)

Thus the "readily realizable market value" test disappeared from the statute. A later report, reviewing the section, expressed its purpose as follows:

"The law has provided for 12 years that gain or loss is recognized on exchanges of property having a fair market value, such as stocks, bonds, and negotiable instruments; on exchanges of property held primarily for sale; or on exchanges of one kind of property for another kind of property; but not on other exchanges of property solely for property of like kind. In other words, profit or loss is recognized in the case of exchanges of notes or securities, which are essentially like money; or in the case of stock in trade; or in case the taxpayer exchanges the property comprising his original investment for a different kind of property; but if the taxpayer's money is still tied up in the same kind of property as that in which it was originally invested, he is not allowed to compute and deduct his theoretical loss on the exchange, nor is he charged with a tax upon his theoretical profit. The calculation of the profit or loss is deferred until it is realized in cash, marketable securities, or other property not of the same kind having a fair market value." (House Ways and Means Committee Report, reprinted in Int.Rev. Cum.Bull.1939–1 (Part 2), p. 564.)[4]

4. Emphasis supplied.

■ These passages lead us to accept as correct the petitioner's position with respect to the purposes of the section. Congress was primarily concerned with the inequity, in the case of an exchange, of forcing a taxpayer to recognize a paper gain which was still tied up in a continuing investment of the same sort. If such gains were not to be recognized, however, upon the ground that they were theoretical, neither should equally theoretical losses. And as to both gains and losses the taxpayer should not have it within his power to avoid the operation of the section by stipulating for the addition of cash, or boot, to the property received in exchange. These considerations, rather than concern for the difficulty of the administrative task of making the valuations necessary to compute gains and losses,[5] were at the root of the Congressional purpose in enacting §§ 112(b) (1) and (e). Indeed, if these sections had been intended to obviate the necessity of making difficult valuations, one would have expected them to provide for nonrecognition of gains and losses in all exchanges, whether the property received in exchanges were "of a like kind" or *not* of a like kind. And if such had been the legislative objective, § 112(c),[6] providing for the recognition of gain from exchanges not wholly in kind, would never have been enacted.

That such indeed was the legislative objective is supported by Portland Oil Co. v. Commissioner of Internal Revenue, 1 Cir., 109 F.2d 479. There Judge Magruder, in speaking of a cognate provision contained in § 112(b), said at page 488:

"It is the purpose of Section 112 (b) (5) to save the taxpayer from an immediate recognition of a gain, or to intermit the claim of a loss, in certain transactions where gain or loss may have accrued in a constitutional sense, but where in a popular and economic sense there has been a mere change in the form of ownership and the taxpayer has not really 'cashed in' on the theoretical gain, or closed out a losing venture."

■ In conformity with this reading of the statute, we think the petitioner here, by its unconditional conveyances to a stranger, had done more than make a change in the *form of ownership*: it was a change as to the *quantum* of ownership whereby, in the words just quoted, it had "closed out a losing venture." By the transaction its capital invested in the real estate involved had been completely liquidated for cash to an amount fully equal to the value of the fee. This, we hold, was a sale—not an exchange within the purview of § 112 (b).

The Tax Court apparently thought it of controlling importance that the transaction in question involved no change in the petitioner's possession of the premises: it felt that the decision in Century Electric Co. v. Commissioner of Internal Rev., supra, controlled the situation here. We think, however, that that case was distinguishable on the facts. For notwithstanding the lengthy findings made with meticulous care by the Tax Court in that case, 15 T.C. 581, there was no finding that the cash re-

5. In Century Electric Co. v. Commissioner of Internal Rev., supra, 192 F.2d at page 159, the court thought that in the enactment of § 112 Congress "was concerned with the administrative problem involved in the computation of gain or loss in transactions of the character with which the section deals." But so far as appears from the opinion the attention of the court had not been called to the legislative history of the section set forth earlier in this opinion.

6. "§ 112.
"(c) *Gain from exchanges not solely in kind.* (1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5), or within the provisions of subsection (1), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph or by subsection (1) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

ceived by the taxpayer was the full equivalent of the value of the fee which the taxpayer had conveyed to the vendee-lessor, and no finding that the lease back called for a rent which was fully equal to the rental value of the premises. Indeed, in its opinion the Court of Appeals pointed to evidence that the fee which the taxpayer had "exchanged" may have had a value substantially in excess of the cash received.[7] And in the Century Electric case, the findings showed, at page 585, that the taxpayer-lessee, unlike the taxpayer here, was not required to pay "general state, city and school taxes" because its lessor was an educational institution which under its charter was exempt from such taxes. Thus the leasehold interest in Century Electric on this account may well have had a premium value.[8] In the absence of findings as to the values of the properties allegedly "exchanged," necessarily there could be no finding of a loss. And without proof of a loss, of course, the taxpayer could not prevail. Indeed, in the Tax Court six of the judges expressly based their concurrences on that limited ground. 15 T.C. 596.

In the Century Electric opinion it was said, 192 F.2d at page 159:

"* * * Subsections 112(b) (1) and 112(e) indicate the controlling policy and purpose of the section, that is, the nonrecognition of gain or loss in transactions where neither is readily measured in terms of money, where in theory the taxpayer may have realized gain or loss but where in fact his economic situation is the same after as it was before the transaction. See Fairfield S. S. Corp. v. Commissioner, 2 Cir., 157 F.2d 321, 323; Trenton Cotton Oil Co. v. Commissioner, 6 Cir., 147 F. 2d 33, 36."

But the Fairfield case referred to was one in which the only change in taxpayer's ownership was through the interposition of a corporate title accomplished by transfer to a corporation wholly owned by the taxpayer. And in the Trenton Cotton Oil case, the court expressly relied on Portland Oil Co. v. Commissioner of Internal Revenue, supra, as stating correctly the purpose of § 112(b), but quoted only the first of the two requisites stated in Portland. As we have already observed, in that case Judge Magruder said that it was the purpose of § 112(b) "to intermit the claim of a loss" not only where the economic situation of the taxpayer is unchanged but also *"where * * * the taxpayer has not * * * closed out a losing venture."*[9] Here plainly the petitioner by the transfer finally closed out a losing venture. And it cannot justly be said that the economic situation of the petitioner was unchanged by a transaction which substituted $2,300,-000 in cash for its investment in real estate and left it under a liability to make annual payments of rent for upwards of thirty years. Many *bona fide* business purposes may be served by such a transaction. Cary, Corporate Financing through the Sale and Lease-Back of Property: Business, Tax, and Policy Considerations, 62 Harv.L.Rev. 1.

In ordinary usage, an "exchange" means the giving of one piece of property in return for another[10]—not, as the Commissioner urges here, the return of a lesser interest in a property received from another. It seems unlikely that Congress intended that an "exchange" should have the strained mean-

7. It said, page 157: "The assessed value of petitioner's foundry building and land upon which it is located for 1943 was $205,000. There was evidence that in St. Louis real property is assessed at its actual value. There was also evidence introduced by petitioner before the Tax Court that the market value for unconditional sale of the foundry build-ing, land and appurtenances was not in excess of $250,000."

8. Under the leases received back by Jordan Marsh Company, the lessee was required to pay all local taxes.

9. Emphasis supplied.

10. Trenton Cotton Oil Co. v. Commissioner, supra [109 F.2d 489].

ing for which the Commissioner contends. For the legislative history [11] states expressly an intent to correct the indefiniteness of prior versions of the Act by excepting from the general rule "specifically and in definite terms those cases of exchanges in which it is not desired to tax the gain or allow the loss."

But even if under certain circumstances the return of a part of the property conveyed may constitute an exchange for purposes of § 112, we think that in this case, in which cash was received for the full value of the property conveyed, the transaction must be classified as a sale. Standard Envelope Manufacturing Co. v. C. I. R., 15 T.C. 41; May Department Stores Co. v. C. I. R., 16 T.C. 547.

Reversed.

11. Committee reports on Act of 1924 quoted above in this opinion.