OPINION. Raum, Judge: On November 9, 1950, Thirty purportedly conveyed a fee simple interest in the land at 30 and 38-40 Broad Street in New York City to Connecticut General Life Insurance Company for a cash consideration of $4 million. On the same day Connecticut leased back the same land to Thirty for an original term of 21 years for an annual net rental of $180,000. The true nature of these two transactions, which the parties agree were closely linked in form as well as in substance, is the issue to be decided. Respondent has determined that Thirty’s formal sale' and immediate leaseback of the land did not constitute a bona fide sale and separate leasing for tax purposes, but rather that it was an exchange of “property * * * for property of a like kind” plus boot (cash in the amount of $4 million) pursuant to sections 112(b) (1) and 112(e) of the 1939 Code[1] with the result that the loss which Thirty claimed[2] as a consequence of the purported sale was not deductible under the statute. Petitioner’s primary position is that there was a genuine sale of the land, not an exchange of property interests. As proof that the transaction constituted a true sale, petitioner has presented evidence that the fair market value of the subject land at the time of the transfer was not in excess of the $4 million which Connecticut paid to Thirty. However, if we should hold that there was an exchange and not a sale for tax purposes, petitioner makes the secondary argument that such exchange was not of property of “like kind” as required for nonrecognition of the loss under the statute. After careful consideration of all the evidence, we agree with petitioner that there was a bona fide sale of the land by Thirty. Cf. Standard Envelope Mfg. Co., 15 T.C. 41; May Department Stores Co., 16 T.C. 547. Therefore, we do not pass upon the question whether the exchange of the particular leasehold interest here involved for an interest in fee in the same land could be considered an exchange of “like” properties. Cf. sec. 29.112(b) (1)-1, Regs. 111; Century Electric Co., 15 T.C. 581, affirmed 192 F. 2d 155 (C.A. 8), certiorari denied 842 U.S. 954. The record shows that the transfer in question was made pursuant to Thirty’s adopted policy of liquidating its property holdings in Lower Manhattan. It is this factor which in the main sets the instant case apart from prior sale and leaseback transactions considered by this Court. In particular it makes the present case distinguishable from both Century Electric Co., supra, upon which respondent chiefly relies, and Jordan Marsh Company v. Commissioner, 269 F. 2d 453 (C.A. 2), reversing a Memorandum Opinion of this Court, which petitioner argues is controlling. We conclude, therefore, that it is not necessary for purposes of decision in the present case to decide whether the decision of the Court of Appeals for the Second Circuit in Jordan Marsh is inconsistent with the result in the earlier Century Electric Co. case. Cf. Rev. Rul. 60-43, 1960-1 C.B. 687. There is no dispute that Thirty had adopted a policy of liquidating its property interests in Lower Manhattan prior to the transaction here involved. It was stipulated that Thirty sold its interest in six Lower Manhattan properties, in addition to the subject property, between November 9, 1950, and June 5, 1952. After the latter date, Thirty no longer owned nor thereafter acquired any property in Lower Manhattan. In disposing of its interest in the property at 30 and 38-40 Broad Street, Thirty decided to sell its interest in the land and its interest in the improvements thereon separately. An officer of Thirty testified that this was done not only because the officers of Thirty believed that they could thereby obtain a higher overall price for the whole property, but also because they wanted to register a tax loss on the land to offset profits on other sales by the corporation. As a result only the land was transferred to Connecticut on November 9, 1950. Although it appears that Thirty had not yet negotiated the sale of the improvements on the land together with the leasehold interest that it obtained back from Connecticut, it is apparent that at the time of the sale to Connecticut Thirty intended also to liquidate these remaining interests in the property. The record reveals that it did in fact sell these interests in the 30 and 38-40 Broad Street property to an unrelated corporation, Thirty Associates, within 2 years, on June 5, 1952. In these circumstances we think that the transfer of the land alone on November 9, 1950, was a bona fide sale. Thirty conveyed its fee interest in the property without reserving any right of repurchase. We have made a finding that the fair market value of the land on the date of transfer was not in excess of the $4 million which Connecticut paid to Thirty. In addition, we have made a finding that a fair annual net rental for this land on November 9, 1950, was not in excess of tbe $180,000 which. Thirty agreed to pay Connecticut. Thus, it does not appear that the leaseback arrangement which Thirty and Connecticut signed as a part of the total transaction had any separate value which can properly be viewed as a portion of the consideration paid or exchanged. The fact that Thirty was willing to sell the land in question only with some kind of leaseback arrangement included does not of itself detract from the reality of the sale. Nor does the fact that tax considerations in part motivated the particular transaction. Both of these factors were also present in Standard Envelope Mfg. Co., supra, and May Department Stores Co., supra, where it was held that bona fide sales had taken place. In those cases, as here, the sale was the result of extended arm’s-length negotiation, the price paid was at least equal to the property’s then fair market value, and the only interest retained by the seller was that of lessee for a definite term. While those cases did not involve a segregated sale of only land apart from the improvements thereon, we think that the presence of this factor in the instant case should not change the result. Since, as already noted, the conveyance here involved was made pursuant to a policy of liquidating Thirty’s property holdings in the immediate area, in many respects the instant case presents an even stronger set of facts in support of the reality of the sale. After November 9, 1950, we think that Thirty’s rights as lessee of the land at 30 and 38-40 Broad Street were in no sente a “continuation of the old investment [in the land] still unliquidated.” Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 268; sec. 29.112 (a)-1, Regs. 111. We are satisfied that Thirty yielded substantial economic and property rights by transferring its ownership in fee to Connecticut and that it succeeded for purposes of this transaction in liquidating its invested capital in the land. As such there was a true sale, and petitioner is entitled under the statute to recognize the loss that was thereby sustained. Decision will be entered for the petitioner. SBC. 112. RECOGNITION OB GAIN OR LOSS. (b) Exchanges Solely in Kind.— (1) Property held fob productive use ob investment. — No gain or loss shall be recognized If property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial Interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment. ******* (e) Loss From Exchanges not Solely in Kind. — If an exchange would be within the provisions of subsection (b) (1) * * * of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized. Neither the amount of the loss which Thirty sustained if the sale was bona fide nor the manner in which such loss was carried back as a net operating loss and deducted in the taxable year ending April 30, 1950, deducted as a net operating loss for the taxable year ending April 30, 1951, and carried forward as a net operating loss and deducted in the taxable year ending April 30,1952, is presently in issue.