### REGALS REALTY CO. v. COMMISSIONER OF INTERNAL REVENUE.
#### No. 163.

Circuit Court of Appeals, Second Circuit.

Argued April 9, 1942.

Decided May 8, 1942.

932

Chadbourne, Hunt, Jaeckel & Brown, of New York City (Richard P. Jackson, of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Gerald L. Wallace, and Arthur A. Armstrong, Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

This case raises the issue of whether certain Miami real estate, received upon an exchange, was "to be held * * * for investment," so as to be within the tax-free exchange provisions of the Revenue Act of 1936.[1] The Board of Tax Appeals held that the exchange was taxable because the evidence "demonstrates affirmatively" that the property acquired was not "to be held" for investment. Its opinion is reported at 43 B.T.A. 194, 209.

The taxpayer was organized in 1933 by Leonard Marx, a successful real estate speculator, and two associates, to acquire, from a trustee in bankruptcy, the plot and building known as 2-10 East Flagler Street, in Miami, Florida. The price paid was $750, and the purchase was subject to existing leases, and to liens and encumbrances of more than $200,000. Marx succeeded in attracting enough new capital to make alterations and to clear up back interest and taxes, in arranging for a modification of the mortgage, and in concluding favorable leases. By the end of 1934, the property was operating at a profit. Dividends amounting to $5,000 were paid in both 1935 and 1936. In the early part of 1936, representatives of the Burdine Department Store, which was located on an adjoining plot, began negotiations with Marx for the purchase of the taxpayer's property. No definite offer was made, but Marx reported to a stockholders' meeting that he thought he could get $600,000, or about $420,000 above the mortgage. Because the tax upon such a sale would be high, the stockholders decided

---

[1] The relevant provisions are:

Revenue Act of 1936, c. 690, 49 Stat. 1648:

"§ 112.  Recognition of gain or loss * * *

"(b) Exchanges solely in kind—

"(1) Property held for productive use or investment. No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment. * * *

"(c) Gain from exchanges not solely in kind—

"(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property." 26 U.S.C.A.Int.Rev.Code, § 112 (b) (1), (c) (1).

not to consummate the proposed deal. Marx' testimony on this point was as follows:

"I explained * * * that if the property was sold we would get $420,000 and under the provisions of the federal tax law we would have to pay that out as our dividends, and we would get that immediately.

"Q. Who would get that immediately? A. The stockholders, and I think out of the $420,000 we would have to pay corporate and individual taxes, and there would be $140,000 left, or something like that; maybe it was $180,000 but it was less than $200,000 anyhow. They said, 'Well, there is no sense in the deal for us. What can we buy with $140,000, or, say $150,000 that will give us anything like that income?'"

On being informed of this decision, the Burdine people made another proposal. They offered to give the taxpayer $120,000 in cash and a nearby property, located at 26 East Flagler, and worth $300,000, which they had purchased as an addition to their department but which was not suitable for that purpose because of a difference in floor levels. Under this plan, the transfer of 2-10 East Flagler was to be subject to the mortgage. In making this proposal, Burdine's representatives said that the transfer would come within the provisions of § 112(b)(1), so that only the cash received would be taxable. Mr. Marx asked his bookkeeper to look up § 112(b)(1), which "seemed to be just right." He then reported the offer to a stockholders' meeting, saying that 26 East Flagler Street had a higher traffic count than the property at 2-10, that upon the expiration in 1938 of a lease with S. H. Kress, they could probably get a higher rent for the new property, and that "I thought this was a very adequate investment, to replace the investment that we were making, and this was an excellent proposal, this swap, and I felt that they should think it over very carefully before turning it down." He said that, in his opinion, the company would be taxable only on the cash received.

The offer was accepted on July 2, 1936. On August 10, 1936, the Board of Directors met and adopted resolutions to liquidate the company, by distributing the cash received as a liquidating dividend and by selling 26 East Flagler Street. A stockholders' meeting held the same day approved of this action, adding the requirement that the liquidation should be in accordance with § 115(c) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 868, which made it possible to treat dividends received on liquidation as return of capital, so that gain thus realized would be taxable at the capital gain rate. In 1937 the taxpayer transferred its property to 26 East Flagler Street Corporation, and distributed the stock of this new corporation to its stockholders.

In arguing that the acquisition of the 26 East Flagler property by the taxpayer was a tax-free exchange under the provisions of § 112(b) quoted above, the taxpayer urges that its sole interest was in making a profitable investment. It points to the refusal to sell 2-10 as evidence of its intention not to convert its property into cash, and says that the exchange rather than a sale was decided upon so that the gain would not have to be recognized. The undisputed desire to avoid a tax on the gain, it says, is strong evidence that it did not intend to sell its property, but intended instead to hold it as an investment.

Against this we have a finding by the Board of Tax Appeals that the taxpayer did not intend to hold the property for investment. For that finding, there is ample support in the record. We have already adverted to the August 10, 1936 resolutions of the directors and stockholders, which spoke of effecting a complete liquidation of the company by selling 26 East Flagler Street. While the minutes were prepared after the meeting and by the taxpayer's counsel rather than by the Secretary, we cannot say that the Board should therefore have decided that they did not reflect accurately the events. Marx said that although the minutes used the word "sell," the intention was only to transfer the property to a new corporation. Yet, on February 10, 1937, according to the minutes of a directors' meeting, Marx "reported that in accordance with the plan of liquidation of the Company, he had been endeavoring to sell the remaining piece of real estate owned by the Company at 26 East Flagler Street, Miami, Florida. He had been unsuccessful in finding a purchaser, and he decided that apparently the time was not propitious for the sale of this property. He, therefore, suggested that, in accordance with the plan of liquidation, this property be sold to the 26 East Flagler Street Corporation, a new company in the process of formulation, in exchange for

934

One Hundred (100) shares of the capital stock of the 26 East Flagler Street Corporation."

The Board had before it other evidence in conflict with taxpayer's assertion that the property was held for investment. Thus, the day following the August 10 meeting, Marx wired a broker, in response to his inquiry about the selling-price of 26 East Flagler, that no price "has been put on building *as yet*."[2] He repeated this statement in a letter to the same broker two weeks later.

We need not go into the evidence in greater detail; enough has been presented to show that there was substantial evidence to sustain the Board's finding as to the taxpayer's intention, i.e., its finding that the taxpayer did not establish that 2-10 Flagler Street was exchanged for property "to be held * * * for investment." We cannot grant a trial de novo merely because there was evidence on which it might have based a contrary conclusion; Helvering v. National Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 82 L.Ed. 1346. The Board's finding as to intention is not "a conclusion of law," as in Midwood Associates, Inc., v. Commissioner, 2 Cir., 115 F.2d 871, 872. Nor is this a case like Blackmer v. Commissioner, 2 Cir., 70 F.2d 255, 92 A.L.R. 982, where the only evidence was the taxpayer's uncontradicted testimony, which was in entire harmony with all the surrounding circumstances.

The taxpayer makes a further argument, namely, that its intention at the time of the exchange is not relevant on the issue of taxability. To support this argument, it points to a statement in the Committee Report[3] on the Revenue Act of 1924 (where the forerunner of § 112(b)(1) appeared as § 203(b)(1), 26 U.S.C.A. Int.Rev. Acts, page 4) that the "intention of the party at the time of the exchange is difficult to determine, is subject to change by him and does not represent a fair basis of determining tax liability." But that statement must not be wrenched from its context. It explained the abolition, in the Act of 1924, of the earlier requirement, shown by § 202(c)(1) of the Act of 1921, 42 Stat. 230, that property held for investment must be exchanged for property to be held for investment, while property held for productive use must be exchanged for property to be held for productive use. By this requirement, it was necessary to decide whether the taxpayer's intent was to hold for investment or for productive use, and it was this examination as to intention which was rejected by Congress, which said, "If the property received is of a like kind, it is immaterial whether it is to be held for investment or for productive use." Under the amended provision, so long as the purpose is one or the other or both, the exchange is tax-free. But the taxpayer must still acquire the property (a) for investment or productive use, rather than (b) for inventory, sale, or similar purposes.

The intention to hold for a sufficient time to reduce taxes, and no longer, does not satisfy the statutory test.

The decision of the Board of Tax Appeals is affirmed.

---

. [2] Italics added.

[3] 68th Cong., 1st sess., Sen.Rept. 398.