FRED S. WAGENSEN, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5367–78, 8201–78.     Filed July 9, 1980.

---

[5]See Rule 13, Tax Court Rules of Practice and Procedure.

*Frank M. Cavanaugh,* for the petitioner.
*Richard D. D'Estrada,* for the respondent.

FEATHERSTON, *Judge:* In these consolidated cases, respondent determined deficiencies of $353,881, $1,806, and $1,444 in petitioner's Federal income taxes for 1974, 1975, and 1976, respectively. The issues for decision are:

(1) Whether section 1031[1] applies to an exchange of petitioner's ranch for another ranch and cash where he subsequently gave the ranch and some of the cash to his children.

(2) Whether a partnership in which petitioner is a partner is entitled to investment credit on livestock that the partnership included in inventory.

### FINDINGS OF FACT

Petitioner Fred S. Wagensen was a legal resident of Gillette, Wyo., when he filed his petition. He filed his individual Federal income tax returns for 1974, 1975, and 1976 with the Internal Revenue Service Center, Ogden, Utah.

Petitioner, age 83 at the time of trial, was involved in ranching in Campbell County, Wyo., for over 50 years. Since at least 1956, petitioner operated a cattle ranching business in partnership with his son, Donald. The partnership, known as the Wagensen Ranch partnership, filed returns for 1974, 1975, and 1976. All of the real property used by the partnership was owned by petitioner and his wife as joint tenants until her death in 1972. Thereafter, until November 8, 1974, the property was owned solely by petitioner. The partnership paid the property taxes on the real property used by it. During 1974 through 1976,

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

petitioner continued to operate the cattle-ranching business in partnership with his son.

During the late 1960's, the Carter Oil Co. (Carter) purchased at auction from the Federal Government a 20-year lease covering coal underlying one of the ranches owned by petitioner known as the Wagensen or Rawhide Ranch. During the period 1970 to 1973, petitioner negotiated with Carter and other companies for the sale of petitioner's ranch. Consistently throughout the negotiations, Carter indicated its willingness to pay cash, but petitioner made it clear that he wanted to receive, in exchange, other property on which to continue his ranching business. In early 1973, petitioner and Carter agreed that petitioner would transfer the Wagensen Ranch to Carter in exchange for another designated ranch if Carter could acquire that ranch. Carter was unable to acquire that ranch, however, and the agreement terminated.

On September 19, 1973, petitioner entered into a contract with Carter setting forth the terms on which Carter would acquire the Wagensen Ranch. Under the contract, petitioner executed a deed to Carter for the ranch. The value placed on the ranch by the contract was $3 million. The contract directed that the deed be placed in escrow until the date of closing, at which time it would be delivered to Carter. The contract obligated Carter to acquire and transfer to petitioner a maximum of five properties which were satisfactory to him. If the total purchase price of the properties transferred to petitioner was less than the value of the Wagensen Ranch, Carter would pay the difference in cash at closing. If the purchase price exceeded the Wagensen Ranch's value, petitioner would pay the difference. If no lands satisfactory to petitioner were acquired within 5 years, then Carter would pay cash of $3 million to petitioner.

The contract further provided that, upon each conveyance of lands by Carter to petitioner, Carter would be entitled to possess, for purposes of coal mining, a portion of the Wagensen Ranch approximately equal in value to the land transferred to petitioner. To the extent that Carter used portions of the Wagensen Ranch prior to the transfer of property to petitioner, Carter was obligated to pay rent of $5 per acre per year. To avoid disrupting petitioner's cattle operations until new property was acquired, the agreement also granted petitioner a 10-year

renewable lease on the ranch subject to Carter's rights. The lease was terminable at will by Carter.

On January 18, 1974, Carter executed a deed to property, known as the Napier Ranch, to petitioner. The deed was recorded on January 31, 1974. The cost of the Napier Ranch was $995,487. After the purchase of the Napier Ranch, petitioner and Carter continued to search for additional ranching properties through September 1974. No ranches satisfactory to petitioner, however, were found, and thus, Carter did not purchase any more property for petitioner.

Subsequent to the Napier Ranch acquisition, petitioner discussed with his accountant the amount of gift tax that would be due if he transferred his property to his children. In early fall 1974, petitioner decided not to seek additional land but instead to accept the cash due in order to pay taxes and ensure solvency in case of difficult times such as a drought. On September 21, 1974, petitioner informed Carter of his decision to take the remaining cash. Shortly thereafter, he also informed his children, Donald and Opel, that he intended to transfer one-half of the Napier Ranch and $500,000, subject to their obligation to pay the gift tax thereon, to each of them. At no time had the children taken part in the negotiations with Carter.

Petitioner, prior to his wife's death, had discussed with her the possibility of transferring their property to their children to reduce their estate taxes. Throughout the negotiations with Carter, petitioner intended eventually to transfer his property to his children. Nevertheless, at no time prior to petitioner's announcement did his children have any indication that the gift would be made.

On October 15, 1974, Carter paid petitioner $2,004,513.76, representing the balance due petitioner under the September 19, 1973, agreement, and Carter received the Wagensen Ranch deed from escrow. On that same day, petitioner transferred $1 million to Opel and Donald and his wife. On November 8, 1974, petitioner executed deeds to Opel and Donald and his wife conveying approximately one-half of the Napier Ranch to each.

Petitioner filed a gift tax return for the calendar quarter ended December 1974 reflecting payment of gift tax by the donees on the transfer of the cash and property in the amount of $419,068.08. Petitioner, in his 1974 income tax return, reported a

capital gain of $2,000,902, consisting of the cash received less cost or other basis and expense of sale, on the exchange.

During 1974 through 1976, all of the Wagensen Ranch partnership livestock, including the breeding livestock, was included in the inventory of the partnership. No depreciation was claimed by the partnership on its livestock.

## OPINION

### 1. *Like-Kind Exchange*

Section 1031[2] provides that an exchange of like-kind property (not including stock in trade or other property held primarily for sale) held for use in a trade or business or investment is a nontaxable event. If cash or other property which does not qualify as like-kind property is included in the exchange, gain is recognized to the extent of the cash or other property received.

Respondent does not contend that the properties exchanged are not like kind, that the receipt of cash disqualifies the transaction, or that the property was held primarily for sale.[3] Rather, respondent argues that the transaction fails to qualify under section 1031 on the theory that petitioner intended to make a gift of the acquired property and thus did not hold it for investment or use in trade or business as is required by the statute. We hold for petitioner.

---

[2]Sec. 1031 provides in part:

(a) NONRECOGNITION OF GAIN OR LOSS FROM EXCHANGES SOLELY IN KIND.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

(b) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—If an exchange would be within the provisions of subsection (a), of section 1035(a), of section 1036(a), or of section 1037(a), if it were not for the fact that the property received in exchange consists not only of property permitted by such provisions to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

[3]Nor has respondent challenged the applicability of sec. 1031 on the ground that Carter did not own the Napier Ranch at the time the overall exchange plan was adopted on Sept. 19, 1973. As to the so-called "three corner" exchanges, see, e.g., *Coastal Terminals, Inc. v. United States*, 320 F.2d 333 (4th Cir. 1963); *Alderson v. Commissioner*, 317 F.2d 790 (9th Cir. 1963), revg. 38 T.C. 215 (1962); *W. D. Haden Co. v. Commissioner*, 165 F.2d 588, 590 (5th Cir. 1948), affg. on this issue a Memorandum Opinion of this Court; *Biggs v. Commissioner*, 69 T.C. 905, 913 (1978); *Coupe v. Commissioner*, 52 T.C. 394, 405 (1969); *J. H. Baird Publishing Co. v. Commissioner*, 39 T.C. 608 (1962).

One of the primary purposes for allowing the deferral of gain in a like-kind exchange is to avoid imposing a tax upon a taxpayer who, while changing his form of ownership, is continuing the nature of his investment. H. Rept. 704, 73d Cong., 2d Sess. (1934), 1939–1 C.B. (Part 2) 554, 564. *Jordan Marsh Co. v. Commissioner*, 269 F.2d 453, 455 (2d Cir. 1959), revg. a Memorandum Opinion of this Court on another point; *Biggs v. Commissioner*, 69 T.C. 905, 913 (1978). In *Koch v. Commissioner*, 71 T.C. 54, 63–64 (1978), we explained:

> The basic reason for allowing nonrecognition of gain or loss on the exchange of like-kind property is that the taxpayer's economic situation after the exchange is fundamentally the same as it was before the transaction occurred. "[I]f the taxpayer's money is still tied up in the same kind of property as that in which it was originally invested, he is not allowed to compute and deduct his theoretical loss on the exchange, nor is he charged with a tax upon his theoretical profit." * * * The rules of section 1031 apply automatically; they are not elective. * * * The underlying assumption of section 1031(a) is that the new property is substantially a continuation of the old investment still unliquidated. * * *

In the present case, the exchange did not constitute a cashing in on petitioner's investment except to the extent of the approximately $2 million which he reported as capital gain. To the contrary, the exchange actually increased petitioner's ranching property acreage. The Wagensen Ranch had approximately 5,000 acres, and the Napier Ranch had approximately 18,000 acres. The value of the Wagensen Ranch in excess of the approximately $2 million which petitioner ultimately received in the deal with Carter continued to be "tied up" in ranch land, i.e., the Napier Ranch.

From January 18, 1974, when petitioner acquired title to the Napier Ranch, until November 8, 1974, when he conveyed the ranch to his son and daughter, a period in excess of 9 months, petitioner held the Napier Ranch for use by the ranching partnerhsip of petitioner and his son. During that period, the ranch was owned by petitioner and was held for use by the same parties and for the same purposes as was the Wagensen Ranch. Petitioner's goal from the outset of his negotiations with Carter was to obtain other ranch land to replace the Wagensen Ranch, and Carter's representatives made extensive efforts to locate Wyoming ranch land, in addition to the Napier Ranch, that could be exchanged for other portions of the Wagensen Ranch. Thus, during this 9-month period, petitioner held the Napier Ranch

"for productive use in trade or business or for investment" within the meaning of section 1031. After petitioner gave the Napier Ranch to his children, the partnership of petitioner and his son continued to use the ranch through the date of trial.

Respondent's argument that petitioner acquired the Napier Ranch in order to give it to his children and, therefore, section 1031 is inapplicable, is without merit. It is true that petitioner, a parent of advanced years, contemplated eventually passing his property to his children. He frankly testified that he and his wife, prior to her death, had discussed that possibility. Nevertheless, the record shows that he had no concrete plans to do so when he acquired the Napier Ranch. Indeed, Carter and petitioner continued to search for additional ranch properties to replace the Wagensen Ranch, and petitioner continued to hold the Napier Ranch for the partnership's cattle business. Petitioner did not inform Carter of his decision to take the remaining cash rather than additional ranch lands until September 21, 1974. He also did not inform his children of his plan to give them the Napier Ranch until after that date.

Not until after petitioner had received the deed to the Napier Ranch in January 1974 did he initiate discussions with his accountants on the income and gift tax implications of giving his son and daughter the Napier Ranch and cash. He learned that the taxes would approximate $1 million and that he might not have enough cash to pay them if he took another large parcel of land from Carter. In light of these facts, he made his decision to divide the Napier Ranch and give one-half of it to each of his children. After making that decision, he worked out an equitable division of the ranch between his son and daughter. In no sense, therefore, can it be said that the exchange with Carter was part of the gift transaction. Petitioner's general desire on January 18, 1974, when he received the deed to the Napier Ranch, eventually to transfer his property to his children, is not inconsistent with his intent at that time to hold the ranch for productive use in business or for investment.

Respondent relies upon *Regals Realty Co. v. Commissioner*, 127 F.2d 931 (2d Cir. 1942), affg. 43 B.T.A. 194 (1940), to support his theory that petitioner intended to transfer the acquired ranch as a gift, and thus it would not be held for investment or use in his trade or business as section 1031 requires. In that case, the court upheld a Board of Tax Appeals decision that the

transaction under consideration failed to qualify as a tax-free like-kind exchange because the petitioner held the received property for sale rather than for investment (127 F.2d at 933–934). Respondent, however, does not contend that petitioner held the Napier Ranch for sale. Thus, *Regals Realty Co. v. Commissioner, supra,* is inapposite here. Cf. *Griffin v. Commissioner,* 49 T.C. 253 (1967).

Generally, courts look to the substance of the transaction rather than to its form when analyzing a purported section 1031 exchange of property. *Crenshaw v. United States,* 450 F.2d 472, 475 (5th Cir. 1971), cert. denied 408 U.S. 923 (1972); *Biggs v. Commissioner, supra* at 914. In the instant case, if the form of the transaction had been altered so that petitioner had given an interest in the Wagensen Ranch to his children prior to the exchange with Carter, the children's subsequent exchange of the property with Carter would have qualified under section 1031. The substance of that transaction, however, is essentially the same as the substance of the transaction here.[4] Thus, to hold that the exchange in the instant case fails to qualify for nonrecognition treatment merely because the gift was made after the exchange rather than before it would exalt form over substance. See *Biggs v. Commissioner, supra* at 914–918.

## 2. *Investment Credit*

Respondent disallowed investment credits of $1,806 and $1,819 claimed for 1975 and 1976, respectively, on the theory that these amounts represent credit taken on breeding livestock which was carried in inventory by the partnership. Consequently, respondent concludes that because petitioner elected to carry the livestock in inventory rather than to depreciate it, the livestock is ineligible for the investment credit. We hold for respondent on this issue.

Section 38 provides a credit against tax for investment in certain depreciable property. Section 48(a)(1) defines "section 38 property" to include "only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable." Livestock, except horses, may constitute "section 38

---

[4] We recognize that a difference would result between the hypothesized situation and the instant case in that here petitioner retained some of the cash proceeds from the exchange. The retention of that cash, however, does not alter the nature of the transaction.

property." Sec. 48(a)(6). Section 1.48–1(b)(1), Income Tax Regs., further provides that:

> (b) *Depreciation allowable.* (1) Property is not section 38 property unless a deduction for depreciation (or amortization in lieu of depreciation) with respect to such property is allowable to the taxpayer for the taxable year. A deduction for depreciation is allowable if the property is of a character subject to the allowance for depreciation under section 167 and the basis (or cost) of the property is recovered through a method of depreciation, * * *

Thus, livestock will constitute section 38 property and hence qualify for the investment credit only where the livestock is depreciable. "Livestock acquired for work, breeding, or dairy purposes may be depreciated unless included in an inventory used to determine profits in accordance with section 61 and the regulations thereunder." Sec. 1.167(a)–6(b), Income Tax Regs.

Petitioner does not dispute the amount of the livestock or that it was carried in inventory. Rather, he contends that the breeding livestock was mistakenly listed in inventory. He argues that the cost of the livestock was not included in expenses used to determine partnership income. Thus, he concludes that the livestock is depreciable because of its unrecovered cost basis, and that he should not be foreclosed from the investment credit merely because he erroneously omitted to take depreciation on the livestock. Petitioner states that the correct action would be, rather than denying the credit, to allow the credit if not the depreciation as well. We disagree.

All of the Wagensen partnership livestock, including breeding cattle, was included in the partnership's inventory.[5] Consequently, because the cost of the breeding cattle was included in inventory and used to determine profits, the cattle is not depreciable, and petitioner is not entitled to an investment credit for them. See sec. 1.167(a)–6(b), Income Tax Regs. while this seems to be an unfortunate result, we see no alternative under the statute and regulations as they are written.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*

---

[5] Under sec. 1.471–6, Income Tax Regs., a livestock raiser may complete his return using an inventory method of accounting rather than the cash receipts and disbursements method.

---

Petitioner, in his brief, indicates that he used the unit-of-livestock method of accounting. A rancher using this method may elect to either include breeding livestock in inventory or treat them as capital assets subject to depreciation. Sec. 1.471–6(g), Income Tax Regs. Here, petitioner chose not to treat the livestock as capital assets because he included them in inventory. Hence, no investment credit may be taken on the cattle included in inventory.