DOLLIE H. CLICK, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12138–78.    Filed February 16, 1982.

*Jonathan J. Broome, Jr.,* and *Joel M. Birken,* for the petitioner.

*Barry A. Furman,* for the respondent.

STERRETT, *Judge:* By statutory notice dated August 4, 1978, respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1974 in the amount of $45,921.05. Petitioner paid the amount of the asserted deficiency on August 17, 1978, which was subsequent to her

receipt of the statutory notice but before filing her petition with this Court on October 26, 1978. On January 13, 1981, respondent filed an amended answer in which he asserted that the deficiency against petitioner should be increased by $9,406.80 (for a total of $55,327.85). Petitioner then amended her petition on January 13, 1981, to request that the Court find that there was no deficiency for 1974 and to direct that the overpayment of $45,921.05 plus interest be refunded to her. No objection was made either to the amendment to the petition or the amendment to the answer.

The issues for our decision are (1) whether the nonrecognition provisions of section 1031, I.R.C. 1954, apply to petitioner's acquisition of two residential properties; and (2) if section 1031 applies, whether petitioner's receipt of cash, a promissory note, and two properties constitutes two separate transactions for purposes of reporting on the installment method under section 453.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioner Dollie H. Click resided in Fairfax, Va., at the time of filing her petition herein. Using a single filing status, she filed a Federal income tax return, Form 1040, for the calendar year 1974 with the Internal Revenue Service Center at Memphis, Tenn.

On December 30, 1964, petitioner and her husband purchased approximately 161.250 acres of farmland (hereinafter the farm) in Prince William County, for $110,000. The property was to be held for investment purposes. On September 19, 1967, petitioner and her husband conveyed approximately 4.085 acres of the farm (hereinafter parcel B) to their daughter and son-in-law, Mary and Carlton Highsmith. On June 27, 1967, petitioner and her husband conveyed approximately 2.080 acres of the farm (hereinafter parcel C) to their son and daughter-in-law, John and Sharon Click. Petitioner's remaining parcel consisted of approximately 155.085 acres (hereinafter parcel A).

Petitioner's husband died on September 21, 1972. During the last months of 1972, petitioner received a number of offers to

purchase the farm. All of these offers were made by Manassas Realty, on behalf of Williams Properties, Inc., and an undisclosed principal. The undisclosed principal was later identified as the Marriott Corp. (hereinafter Marriott).

On January 9, 1973, petitioner entered into an agreement of lease and purchase option with Williams Properties, Inc., on behalf of its still undisclosed principal, Marriott. Although the agreement provided for the purchase of the entire farm, petitioner's children and their spouses, who owned parcels B and C, neither executed the agreement nor were named as parties to it.

Marriott hoped to acquire the entire farm and certain land adjacent to the farm in order to build a 515-acre amusement park that would contain, inter alia, shops, theaters, and carnival rides. As of June 9, 1973, Marriott had obtained options to purchase an additional 353.46 acres of land surrounding the farm. The farm was the largest single component of the proposed park site, and Marriott considered its acquisition to be a critical and inseparable part of its plans.

In June 1973, Marriott indicated its desire to renegotiate the terms of its January 9, 1973, purchase option because it was not binding on petitioner's children, it contained no subordination provision to allow Marriott to finance improvements, it contained no prepayment provisions, and it was difficult to administer. On June 9, 1973, petitioner and Mr. and Mrs. Highsmith executed with Marriott a 1-year lease and a revised purchase option agreement for parcels A and B. The option agreement gave Marriott until June 9, 1974, to inform the petitioner and Mr. and Mrs. Highsmith of its intention to purchase the property, and until July 9, 1974, to reach settlement on the purchase. In addition, the agreement contained a provision that permitted the sellers, petitioner and her daughter and son-in-law, to opt for partial or full payment through the receipt of "exchange" or "swap" property or properties which the sellers would have the right to designate. Also on June 9, 1973, Mr. and Mrs. John Click entered into a separate agreement with Marriott for the sale of parcel C with settlement to take place on or before July 9, 1974.

During this time, Mr. and Mrs. Highsmith owned and resided in a house on North Ninth Street in Arlington, Va.

However, they wanted to move to a new house and so advised petitioner. On petitioner's suggestion, they began looking for a new home to use as "swap" property. Their condition for such property was that it contain a house larger than their house on North Ninth Street. They selected a home, also in Arlington, Va., that was owned by William C. and Bernice Gierisch (hereinafter the Gierisches).

Mr. and Mrs. John Click owned and resided in a house in Fairfax, Va., but they were interested in obtaining a house and more acreage. At petitioner's suggestion, they also began looking for "swap" property. Their condition for such property was that it contain a three-bedroom house with acreage sufficient to maintain a horse. They selected residential property in Clifton, Va., owned by Oscar W. and Margaret Ann Tinney (hereinafter the Tinneys).

The Tinney residence had previously been listed for sale in 1973. Mrs. Sharon Click saw the Tinneys' "for sale" sign and inspected the house several times in 1973. She liked the Tinney residence and wanted to purchase it at that time. However, the Tinneys decided not to sell their house and consequently took it off the market. Subsequently, the Tinneys once again listed their house for sale. Mrs. Click again visited the Tinney residence on several occasions in 1974 prior to the time of Marriott's offer to purchase the house.

On February 22, 1974, Marriott and the Gierisches entered into a purchase agreement for the Gierisch residence. On April 18, 1974, Marriott and the Tinneys entered into a purchase agreement for the Tinney residence. On June 5, 1974, Marriott notified petitioner and Mr. and Mrs. Highsmith of its intent to purchase parcels A and B.

Petitioner did not inspect the Tinney residence until after Marriott had made its offer to purchase and after the house was taken off the market.

On July 9, 1974, the Gierisches and the Tinneys conveyed their houses to Marriott. On the same day, Marriott exercised its option to purchase parcels A and B. Accordingly, petitioner and Mr. and Mrs. Highsmith received from Marriott a promissory note in the amount of $630,925.53, the Gierisch residence valued at $96,152.20, and the Tinney residence valued at $135,816.96 in exchange for parcels A and B. At

closing, the three also received the first installment on the promissory note in the amount of $23,647.

Petitioner held all equity rights in the two residences which were received by her in partial satisfaction of the amount due her from the sale of parcel A to Marriott. Petitioner and Mr. and Mrs. Highsmith did not intend that the Highsmiths' legal interests in either the Gierisch residence or the Tinney residence would be in full or partial satisfaction of their conveyance of parcel B to Marriott. Instead, petitioner and the Highsmiths intended that 2.56 percent of the cash paid at closing on July 9, 1974, and a similar percentage of the principal and interest due under the note, would be in satisfaction of their conveyance of parcel B to Marriott.

On July 9, 1974, Mr. and Mrs. Highsmith together received a total of $619 as their pro rata share of Marriott's initial payment ($23,647) on its purchase of parcels A and B.

On or about July 9, 1974, Mr. and Mrs. Highsmith moved into the Gierisch residence, and Mr. and Mrs. John Click moved into the Tinney residence. The Highsmiths sold their North Ninth Street, Arlington, Va., home on or about July 12, 1974. Sometime in August or September 1974, Mr. and Mrs. John Click secured a purchaser for their Fairfax, Va., home. The closing, however, did not occur until December 27, 1974.

During the period from July 9, 1974, through February 8, 1975, Mr. and Mrs. Highsmith took out property damage insurance and paid property taxes on the Gierisch residence. During the same period, Mr. and Mrs. John Click made substantial improvements to the Tinney residence totaling over $5,000. The improvements included a fence for $593.75 to keep their horse enclosed on the property, an automatic garage door opener for $283.36, a well pump and other expenses related to the well for $239.48, a light fixture for $49.69, wall-to-wall carpeting for $1,440, custom draperies for $1,368.02, and wrought iron railings to replace wooden rails for $392. They also paid $781 to prune a tree, $129.71 for gravel for the driveway, and $30 for repair of a canvas awning. Mr. and Mrs. John Click paid for these improvements themselves and did not ask for petitioner's prior approval. At no time did either couple pay rent to petitioner for the respective houses in which they lived.

During this period, petitioner had other investment proper-

ties. It was her practice, with the advice and assistance of her attorneys, to take care of arrangements, such as obtaining property insurance, with respect to these properties.

On February 8, 1975, petitioner executed a deed of gift for the Tinney residence to John Click and a deed of gift for the Gierisch residence to Mary Highsmith.

On her 1974 income tax return, petitioner reported that she "exchanged approximately 43 acres of real property acquired in 1961 [sic] and held for investment purposes with a value of $231,968 for two pieces of residential real estate to be held for similar purposes of $231,968.00." She elected to report the remainder of the amount received pursuant to section 453.

In his statutory notice, respondent determined that petitioner's exchange of parcel A for the two residential properties and a note and cash does not qualify as a like-kind exchange under section 1031. In the alternative, respondent also determined that the sale and exchange constituted one transaction for purposes of section 453.

### OPINION

We must determine whether petitioner's exchange of farmland for two residential properties, cash, and a note qualifies for nonrecognition treatment under section 1031. Section 1031(a) provides that no gain or loss shall be recognized if property held for productive use in a trade or business or for investment is exchanged solely for property of a like kind which is also "to be held either for productive use in a trade or business or for investment."[1]

To qualify for treatment under section 1031, three requirements must be satisfied: (1) The transaction must be an exchange; (2) the exchange must involve like-kind properties; and (3) both the properties transferred and the properties received must be held either for productive use in a trade or business or for investment. Sec. 1.1031(a)–1(a) and (c), Income Tax Regs. *Brauer v. Commissioner*, 74 T.C. 1134, 1139–1140 (1980). The parties do not question that the transaction at issue constitutes an exchange. Furthermore, they appear to

---

[1]If cash or other property that does not qualify as like-kind property is included in such an exchange, the recipient must recognize gain to the extent of the cash or fair market value of other property received. Sec. 1031(b).

agree that the farmland and the two residences are like-kind properties because the nature and character of the properties, as distinguished from their grade or quality, are substantially the same. See generally sec. 1.1031(a)–1(b), Income Tax Regs.; *Koch v. Commissioner*, 71 T.C. 54, 65 (1978). The controversy, therefore, centers on whether the two residences received by petitioner Dollie H. Click in the exchange were held for investment.

A taxpayer's intent to hold property for investment must be determined as of the time of the exchange.[2] We must examine the substance of the transaction, rather than the form in which it is cast, when analyzing a purported section 1031 exchange of property. *Wagensen v. Commissioner*, 74 T.C. 653, 660 (1980); *Biggs v. Commissioner*, 69 T.C. 905, 914 (1978). The petitioner bears the burden of proving that she had the requisite investment intent. *Regals Realty Co. v. Commissioner*, 43 B.T.A. 194, 208 (1940), affd. 127 F.2d 931 (2d Cir. 1942).

In the instant case, respondent proposes to disallow section 1031 nonrecognition treatment on the theory that petitioner's gifts of the residences were part of a prearranged plan. He alleges that petitioner's intent at the time of the exchange was not to hold the houses for investment, but eventually to gift them to her children. Petitioner counters with the assertion that she had no concrete plan to transfer the acquired property to her children at the time of the exchange. Rather, she stated that she took the property because she wanted "something that would grow in value." As such, she claims that she held the houses as an investment until 7 months after the exchange, at which time she decided to gift them to her children.

In *Wagensen v. Commissioner, supra*, we considered a factual setting that appears, at first glance, to be analogous to the case at hand. The taxpayer therein exchanged his ranch for another ranch and cash. Nine months later, he made a gift of the new ranch and some cash to his son and daughter. We held that the taxpayer had no concrete plans at the time of the like-

---

[2] See *Land Dynamics v. Commissioner*, T.C. Memo. 1978–259 (holding of property for 22 months after exchange did not establish investment intent); *Klarkowski v. Commissioner*, T.C. Memo. 1965–328. See generally Streer, "Eligibility for Nontaxable Exchange Treatment May Depend on Intent in Holding Property," 26 Taxation for Accountants 116 (1981).

kind exchange to make the later gift. First, the facts showed that he did not initiate discussions with his accountants about a gift until after the exchange. Second, he used the acquired ranch in his ranching business during the period between the exchange and the gift. Accordingly, while we found that the general desire to make a gift prior to the time of the exchange is not inconsistent with an intent to hold the acquired ranch for productive use in business or for investment, we also found that, considering the facts presented, the gift was not part of the exchange transaction. 74 T.C. at 659.

Respondent argues that the *Wagensen* opinion does not control in the instant case because petitioner intended to gift the residences to her children at the time of the exchange, and petitioner never had the requisite investment intent. Furthermore, respondent says that the ranch property exchanged in *Wagensen* was inherently investment or business property, while the houses received herein were personal.[3] Respondent asserts that our holding in *Regals Realty Co. v. Commissioner, supra*, is apposite. In *Regals Realty*, the corporate taxpayer swapped real property used in its trade or business for like-kind real property. Approximately 2 weeks later, the corporation's board of directors decided to liquidate and sell the property. Although it was unsuccessful in finding a purchaser, the corporation eventually transferred property to a new corporation in exchange for the new corporation's stock, and such stock was distributed in liquidation to the taxpayer's shareholders. The Board of Tax Appeals there held that the transaction did not qualify for nonrecognition treatment under the predecessor to section 1031 because "It places an unbearable strain on the credulity to believe that under those circumstances the property acquired was 'to be held' for investment." 43 B.T.A. at 209.

---

[3]Respondent further argues that the facts in the instant case would not qualify for sec. 1031 treatment based on the substance-over-form analysis put forth in *Wagensen v. Commissioner*, 74 T.C. 653, 660 (1980). There, the Court reasoned that if the form of the transaction had been altered so that the taxpayer gifted an interest in his ranch to his children prior to the exchange, the children's subsequent exchange of the ranch property would have qualified for nonrecognition treatment. Here, however, if petitioner Dollie Click had transferred a portion of her farm property to her children prior to the exchange, and they had exchanged investment farm property for personal residences (in which they planned to live immediately after the exchange), the children would not be entitled to sec. 1031 treatment.

In the instant case, the facts reveal that petitioner suggested to her son and daughter and their spouses as early as mid–1973 that they look for new homes to use as "swap" property. Mr. and Mrs. Highsmith located the Gierisch residence. Mr. and Mrs. John Click located the Tinney residence, which had been the focus of prior inquiry by Mrs. Click in 1973. Such homes suited the personal lifestyles of the two couples and satisfied their desires for larger homes and more land. Only after Marriott made its offer to purchase did petitioner visit the Tinney residence. We cannot believe that petitioner, who was an experienced investor, had an investment intent with respect to property that she did not personally select and had never seen prior to its selection.

Further, petitioner, now 72 years old, was working on an estate plan with her attorney in 1973 and 1974 at the same time that the idea for the exchange of properties developed and at the time of the transaction with Marriott. As a woman with a potentially substantial estate, petitioner had been advised with respect to estate and gift tax liabilities that might arise. Based on the evidence presented, we believe that petitioner's estate planning activities are highly indicative of an intent at the time of the exchange to gift the residences to her children.

Finally, petitioner's testimony indicates that she normally took care of her investments and obtained property insurance therefor. Here, the facts indicate that Mr. and Mrs. Highsmith took out property insurance and paid property taxes on the Gierisch residence for the period from July 9, 1974, through February 8, 1975. In addition, during the same period, Mr. and Mrs. John Click paid for a homeowner's insurance policy on the Tinney residence. They also made substantial expenditures for improvements on the Tinney residence. John Click testified that he treated the property as his own, although he knew he was not the owner. He lived in the house rent free during the 7-month period and spent money on the improvements purportedly to protect his mother's investment. A review of the expenditures indicates that many were for improvements that were more in the nature of personal custom features than for general maintenance. In addition, the fact that Mr. Click did not obtain his mother's approval before making the expenditures further belies petitioner's

claim that her children lived in the houses as "caretakers" during the period between the exchange and the gift.

Accordingly, we cannot find that petitioner had an investment intent in accepting the homes as "swap" property. Rather, it appears that her primary purpose was to provide larger homes in which her children and grandchildren could reside. From all of the evidence, we believe that petitioner acquired the residences with the intent of making gifts of them to her children and not to hold as investments for eventual sale. While petitioner was certainly a generous and caring parent and grandparent, her concern for the welfare of her family does not qualify the exchange for nonrecognition treatment under section 1031.

Having determined that section 1031 does not apply to the transaction, we need not address the second issue.

*Decision will be entered under Rule 155.*