EDWIN B. LINDSLEY, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lindsley v. Commissioner
Docket No. 20192-80.
United States Tax Court
T.C. Memo 1983-729; 1983 Tax Ct. Memo LEXIS 62; 47 T.C.M. (CCH) 540; T.C.M. (RIA) 83729; December 7, 1983. *62 Held: (1) Petitioner is not entitled to charitable contributions deductions disallowed by respondent; and (2) promotional and public relations expenses are not allowed. Allen J. Gordon, for the petitioner. T. Keith Fogg, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Petitioner Edwin B. Lindsley, Jr., resided in Virginia Beach, Virginia, when he filed his petition. Respondent determined deficiencies in petitioner's Federal income tax liability for the calendar years 1975 and 1976 of $3,417.40 and $6,774.31, respectively. The issues for decision are: (1) Whether charitable contributions claimed by petitioner are allowable in excess of amounts determined by respondent, and (2) whether amounts claimed by petitioner for promotional and public relations expenses are allowable in excess of the amounts allowed by respondent. For convenience the Findings of Fact and Opinion are combined. Charitable Contributions
During the years at issue, petitioner had a real estate broker's license and bought and sold real estate as a profession. In the course of his real estate endeavors, petitioner's usual practice was to purchase property with title problems, *63 free the title from existing encumbrances, and then sell it for a profit. When he acquired property for resale, title to that property usually was in the name of Cobo Corporation, Rollman Corporation or one of petitioner's other nominee corporations. Petitioner and his brother owned all the stock of the Rollman Corporation, and Cobo Corporation was a nominee corporation owned and used by petitioner. Petitioner also purchased real estate in Virginia Beach for investment and generally took title to investment property in his own name. One of the methods by which petitioner had successfully acquired real property was to purchase the stock of a defunct development corporation and reactivate the corporation, thereby acquiring control of any land held by it, such as undedicated streets, unsold lots and perimeter strips. Mrs. Gwenlyn Wood had worked with petitioner in his real estate business prior to the events at issue and had bought and sold parcels of land in various sections of Virginia Beach for her own account. The defunct Virginia-Florida Development Corporation (the Corporation) had developed the Shadow Lawn Heights subdivision in Virginia Beach, having filed its plat in 1924. *64 Petitioner and Mrs. Wood agreed to try to acquire the stock of the Corporation in order to acquire title to any land then held by the Corporation, including undeveloped strips and undedicated streets in this subdivision. In connection with this business activity, petitioner and Mrs. Wood did not initially adopt a plan with respect to the form in which ownership of the property would be held, the way in which the property would be shared by them or their obligations to contribute cash. It was agreed, however, that petitioner would handle the title work with respect to the subdivision while Mrs. Wood would do the traveling to contact former stockholders and would acquire the stock in her name (perhaps with her husband) but in part for the account of petitioner. Petitioner was referred to from time to time in the record as a "silent partner," and petitioner and the Woods contributed to the necessary costs. However, there was never any intention on the part of either petitioner or the Woods to hold and dispose of any real property so acquired as partners. Before any attempts to purchase stock in the Corporation were made, petitioner determined that good title to more than 20 parcels *65 could be obtained. Mrs. Wood purchased all of the stock from the former shareholders of the Corporation, placing it in the names of her husband and herself. On February 4, 1972, the Woods completed acquisition of the parcels formerly held by the Corporation, taking joint title in their names. The parcels thus acquired included those which are the subject of the charitable contributions deduction at issue here. Petitioner and Cobo and Rollman Corporations furnished funds to Mrs. Wood for some of the expenses incurred in acquiring the stock and then legal title to the land. Petitioner and the Woods eventually agreed upon a division of the parcels so acquired from the Corporation and, on October 30, 1973, the Woods conveyed to petitioner in his own name fee simple title (subject to the rights, if any, of the City of Virginia Beach) to six parcels of property. Prior to that date, petitioner had determined to donate five of those parcels as charitable contributions. [1] At least six other parcels were transferred at the same time by deed from the Woods in part to Cobo Corporation and in part to Rollman Corporation. Certain of these parcels were later sold by or at petitioner's direction. *66 The parcels transferred to petitioner and Cobo and Rollman Corporations on October 30, 1973, constituted roughly one-half of the value of the land in the Shadow Lawn Heights subdivision acquired from the Corporation. The Woods retained approximately 12 to 14 parcels for themselves. Petitioner and the Woods thereafter exchanged with each other some parcels so divided on October 30, 1973. Petitioner conveyed five [2] of the parcels received in his own name on October 30, 1973, as follows: Date
Property
Donated
Donee
Parcel 1
11/7/73
London Bridge Baptist
Church
Parcel 2
11/7/73
London Bridge Baptist
Church
Parcel 3
11/7/73
Beachlawn Baptist
Church
Parcel 4
11/7/73
Beachlawn Baptist
Church
Parcel 5
9/28/74
Hebrew Academy of
Tidewater
Petitioner took charitable contributions deductions of $68,150 for the 1973 gifts and $33,500 for the 1974 gift, which *67 resulted in carryforwards to the years at issue. Respondent claims that the deductions were unavailable to petitioner by virtue of section 170(e)(1)(A), [3] which provides: (e) Certain Contributions of Ordinary Income and Capital Gain Property.-- (1) General Rule.--The amount of any charitable contribution of property otherwise taken into account under this section shall be reduced by the sum of-- (A) the amount of gain which would not have been long-term capital gain if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution), * * * There are two aspects of that provision at issue here: (1) Whether the parcels constituted capital assets, and, if they do, *68 (2) whether the parcels were held for more than six months. [4] A negative finding with respect to either issue requires that we hold for respondent on the charitable contributions question. In this proceeding, petitioner bears the burden with respect to the second issue under Rule 142(a). The first issue was raised for the first time in respondent's amended answer and constitutes a "new matter" within the meaning of Rule 142(a). Therefore, respondent bears the burden of proof. [5] See Achiro v. Commissioner,77 T.C. 881, 890 (1981); Estate of Horvath v. Commissioner,59 T.C. 551, 556 (1973); Estate of Falese v. Commissioner,58 T.C. 895, 899 (1972); Estate of Scharf v. Commissioner,38 T.C. 15, 28 (1962), affd. 316 F.2d 625 (7th Cir. 1963); Sorin v. Commissioner,29 T.C. 959, 969 (1958), affd. 271 F.2d 741 (2d Cir. 1959). Based on the evidence and applicable law, prior to the October 30, 1973, deed, petitioner held a one-half undivided interest in the land formerly held by the Corporation. The first question we must address *69 is whether petitioner's holding period of his undivided interest in that land may be tacked onto his holding period of the specific parcels acquired by deed from the Woods on that date. For the following reasons, we conclude that tacking may not occur, so that petitioner did not hold four of the properties for the requisite six months. Petitioner's holding period of his interest in the land purchased from the Corporation began when the Woods acquired legal title to the land. [6] *70 There is no disagreement that the Woods were holding petitioner's share of the land for him, and that an implicit understanding existed between them that petitioner was in fact a joint owner of the property with the Woods. However, although petitioner had an interest in the contributed land during the time that the Woods held title for him, he did not obtain a sole interest in the individual parcels until they were deeded to him on October 30, 1973. Petitioner and the Woods did not delineate at the time the land was obtained who would ultimately receive which parcels. Rather, they pooled their funds and efforts so as to purchase the land jointly. [7]
Under Virginia law, joint ownership is construed as a tenancy in common in the absence of a clear intent to create a joint tenancy with right of survivorship. [8]Gardner v. Gardner,152 Va. 677, 148 S.E. 781 (1929). The central characteristic of a tenancy in common is that "'each tenant is deemed to own, by himself, with most of the attributes of individual ownership, a physically undivided part of the entire parcel.'" Jenkins v. Jenkins,211 Va. 797, 180 S.E. 2d 516, 518 (1971). *71 In Jarrett v. Johnson,52 Va. (11 Gratt.) 327 (1854), the Court of Appeals of Virginia long ago was faced with a factual situation that bears some similarity to the instant case.Prior to a joint purchase of land, the parties had agreed on a division of that land, conditioned upon negotiation of a specified price in the land purchase contract. Although the condition failed, they jointly purchased the land shortly thereafter under a new purchase contract, apparently with conflicting intentions concerning the division. The court found that the prior agreement delineating the division of the land was void because the contract to which it was appended had failed, and that evidence concerning the parties' intentions at the time of purchase was unclear. Therefore, it concluded, in the absence of agreement each was entitled to an undivided moiety of the land. The presumption thereby created under State law is confirmed by the evidence in the record concerning the intent of petitioner and the Woods. While none of the parties who testified at trial adequately characterized *72 petitioner's relationship with the Woods, [9] *73 petitioner introduced into evidence an affidavit of Mr. Wood, which states that petitioner and the Woods each held an "undivided 50% interest" in the assets of the defunct corporation.The October 30th deed affected roughly an equal division in value of the land. Prior to October 30, 1973, petitioner thus held an undivided one-half interest in all of the land obtained from the Corporation. If his exchange on that date of his undivided interest in the whole property for specific parcels qualifies as a tax-free like-kind [10] exchange under section 1031, petitioner's holding period in his undivided interest would be tacked onto his holding period of the parcels at issue, provided he meets the requirements of section 1223(1). If it does not so qualify, petitioner's holding period of the four parcels began at the time of the exchange on October 30, 1973, so that his holding period was less than six months, triggering the restriction of section 170(e)(1)(A). The section 1031 controversy here involves the requirement that both the property transferred and the property received must be held at the time of the exchange for productive use in a trade or business or for investment. Bolker v. Commissioner,81 T.C. 782, 804 (1983); Click v. Commissioner,78 T.C. 225 (1982). Petitioner clearly did not hold the land for productive use in his business. [11] Therefore, he bears the burden of proving that he had the requisite investment intent. Click v. Commissioner,supra;Regals Realty Co. v. Commissioner,43 B.T.A. 194, 208 (1940), affd. 127 F.2d 931 (2d Cir. 1942). The facts here indicate that petitioner's intent in the time of the exchange with respect to five of the parcels received was to donate them as charitable contributions. He quite plainly did not intend to hold them for investment. Four of the parcels were donated only eight days after the exchange. Petitioner also had expressed an intent prior to the exchange to donate all *74 five of the parcels. Because we think it obvious here that petitioner formed his donative intent before the exchange, he did not engage in a like-kind exchange, and his holding period began on October 30, 1973. See Click v. Commissioner,supra at 231. Since four of the parcels were donated within six months, they are not long-term capital gain property and thus are subject to the restriction of section 170(e)(1)(A). With respect to the fifth parcel that was donated on September 28, 1974, the holding period question is not dispositive. However, we believe the evidence shows that this parcel is subject to the section 170(e) restriction because, if it had been sold at the time of the gift--which is the perspective mandated by section 170(e)--it would have constituted property held primarily for sale to customers in the ordinary course of petitioner's business and thus was not *75 capital gain property at all. The same reasoning applies with respect to the four parcels donated in 1973. [12]
The law is clear that a real estate dealer may, under appropriate circumstances, hold a piece of real estate for investment purposes with the hope of long-term appreciation. Municipal Bond Corporation v. Commissioner,382 F.2d 184, 188 (8th Cir. 1967), revg. 46 T.C. 219 (1966); Howell v. Commissioner,57 T.C. 546 (1972). However, the evidence must show that, when petitioner dealt with the parcels of land here involved, he was wearing the hat of an investor rather than that of a dealer. Pritchett v. Commissioner,63 T.C. 149, 164 (1974). In determining *76 whether it does, we must accord greater weight to the objective facts that to petitioner's statements concerning investment intent. Cf. Dreicer v. Commissioner,78 T.C. 642 (1982). The evidence here leads us to conclude that these parcels, if they had been sold by petitioner at the time of contribution, which have given rise to ordinary business income. The similarity between petitioner's business activities and his dealings with this project is striking. Petitioner assembled real estate for a living, some of which he held for investment, some of which he sold in his business and some of which he donated. He testified, however, that he usually obtained property with title problems which he expended his own efforts in clearing, thereby minimizing his financial cost.The efforts expended by petitioner is his business ordinarily involved locating heirs, shareholders or spouses, verifying ownership and otherwise clearing title. It requires little analysis to see the similarity between his business efforts and those expended with respect to the parcels at issue.Prior to purchase of the Corporation's stock petitioner determined the chain of title to all of the parcels owned by the Corporation, *77 including the parcels at issue. Mrs. Wood then obtained legal title to the Corporation from its shareholders. This deal was, in other words, "right up his alley." [13]
The form of ownership also reveals petitioner's true intent. Petitioner testified that he segregated land held for investment from his business by placing title to investment property in his own name, whereas title to business property was in the name of his nominee corporations. There was no segregation between investment and business property, however, during the period that the Woods held the parcels for him. See Pritchett v. Commissioner,supra at 164. When petitioner and the Woods split the parcels on October 30, 1973, legal title to some *78 was put in his own name and to others in the name of two of his nominee corporations. Thus it was not until that time that any segregation occurred. Prior to that date petitioner's undivided interest in all parcels was held as part of his real estate business. [14] Moreover, this date was only eight days before four of the contributions occurred. Therefore, the parcels were for the most part held as a unit. Finally, the facts tend to show that petitioner did not plan to hold the parcels for long-term appreciation. Mrs. Wood, while holding the property and acting for petitioner, made an effort to sell one of the parcels that was donated 56 days later to the attempted purchaser. While this effort does not conclusively *79 establish that such a sale would have been in the ordinary course of petitioner's business, it is indicative of his intent at this time to dispose of his share of the parcels.Moreover, prior to his receipt of legal title to the parcels, he discussed with Mrs. Wood his intent to donate them, including the ones that went to Beachlawn Baptist Church that year and to the Hebrew Academy the following year. The parcels donated to the London Bridge Baptist Church were offered to and accepted by the church two weeks before he even received title to them. Thus, even before his receipt of legal title to the parcels petitioner had determined that he was going to dispose of them by charitable contribution. This compels the conclusion that he was not holding them for investment.Therefore, that petitioner held one of the parcels for 11 months does not under these circumstances demonstrate investment intent with respect to that parcel. For these reasons, we think that respondent has met his burden of proving that these parcels, if sold at the time of contribution, would have given rise to ordinary income because they were a part of petitioner's real estate business. Therefore, section 170(e) applies *80 to limit petitioner's deduction to his basis. Respondent in the notice of deficiency allowed a $3,000 deduction in 1974 for the fair market value of the parcel donated during that year. It was not until he filed his amended answer that respondent took the position adopted herein that none of the parcels constituted a capital asset. Since there was no attempt by petitioner to prove his basis in any of the parcels, the charitable deduction should have been disallowed altogether. [15]
Promotional Expenses
The final issue is whether petitioner is entitled to various deductions for promotional expenses taken on his 1975 and 1976 returns. Respondent's disallowance of most of these items is presumed to be correct, and petitioner had the burden of proving otherwise. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). The only items with respect to which petitioner offered any evidence are discussed below. We assume that petitioner has abandoned any claim with respect to the additional amounts deducted on his returns.
Petitioner made several gifts in the course of his business to clerks and secretaries of the various offices *81 he dealt with in an effort to receive better cooperation and service from them.Respondent allowed many of these gifts to be deducted, but correctly disallowed gifts in excess of $25 to individual recipients under section 274(b)(1). [16]
Petitioner also incurred business entertainment expenses and made business gifts which respondent disallowed for lack of substantiation. These included dinners brought to the home of his attorney, circus and barbecue tickets and oranges distributed to various unknown persons, and books for his attorney. Section 274(d) and section 1.274-5, Income Tax Regs; contain very explicit requirements for the substantiation of business entertainment and gift costs. [17] *83 Petitioner has not satisfied these requirements. His oral testimony is simply not enough. Gilman v. Commissioner,72 T.C. 730 (1979). There is no *82 indication in the record that petitioner maintained a log book or similar record for any of these items as required by section 1.274-5(c)(2)(ii), Income Tax Regs.Thus, there is not record with respect to the tickets or oranges other than some evidence of their purchase. Nor is there written substantiation of a business purpose for these items. [18] *84 And there is no evidence concerning the books for the attorney at all other than petitioner's testimony. Petitioner claims that under section 1.274-5(c)(4), Income Tax Regs., he operated under "exceptional circumstances" and thus should be relieved of the strict substantiation requirements of section 274 here, because it was inherently impossible to obtain receipts for most of these gifts. We do not believe that "exceptional circumstances" existed in this case. Petitioner easily could have maintained an account of his meals and gifts. The mere fact that the requirements of section 274(d) are difficult to comply with does not automatically place petitioner in the "exceptional circumstances" category. [19] Petitioner also took a deduction for an airline ticket and other expenses incurred during a trip to Rhode Island. [20] Petitioner testified that he urgently needed to talk to his attorney who was out of town, and petitioner flew up to Rhode Island to meet him. Petitioner could not recall anything about the problem that required such immediate attention. We have no way of knowing on this record whether this was even a business expense, no less an ordinary and necessary one. Nor has it been adequately substantiated under section 274. Petitioner cannot be said to have met his burden with *85 respect to this item. Two other items, consisting of a $60 wedding present to the daughter of two persons who had helped him to obtain records in his business and $300 in-house repairs for the wife of a local politician who had given him some information in Washington, D.C., cannot be deducted either. They are so inherently personal in nature--and so completely out of proportion with the stated benefits received from the donees--that we do not believe them to be business expenses. Rather, these items are nondeductible personal expenses. See section 262. [21] *86 While petitioner's generosity is to be applauded, goodwill does not give rise to a business deduction. [22] Moreover, even if we are to find that these gifts were of a business nature, they have not been adequately substantiated under the strict rules of section 274(d).
Decision will be entered under Rule 155.
Footnotes
1. On Sept. 12, 1973, the Woods offered to sell one of the parcels at issue to the Beachlawn Baptist Church, but that offer was not accepted. While the evidence does not show whether this offer was made before or after the division of parcels was agreed upon, it is appropriate to assume in either event that it was made with petitioner's knowledge and concurrence.↩
2. While there is some indication that petitioner traded the sixth parcel received in his own name for another parcel held by the Woods, the evidence does not show what became of the one received in the exchange--whether petitioner sold it, retained it, or donated it at a later time.↩
3. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended, and all rule references are to the Tax Court Rules of Practice and Procedure. ↩
4. During 1973 the holding period to obtain long-term capital gain treatment was six months. Sec. 1222(3). ↩
5. Respondent concedes this in his brief (at page 33).↩
6. We need not address the question raised by petitioner concerning whether that title commenced upon acquisition of the stock of the Corporation or receipt by the Woods of legal title to the land held by it, as either date would achieve the same result. 7. Petitioner's joint ownership with the Woods did not rise to the level of a partnership or joint venture, because they did not carry on the requisite degree of business activity. See Madison Gas & Elec. Co. v. Commissioner,633 F.2d 512, 525 (7th Cir. 1980), affg. 72 T.C. 521 (1979); sec. 1.761-1(a), Income Tax Regs. Nor was there any evidence of intent to create a partnership: there was no express or implied partnership contract, no partnership books were kept, and no partnership returns were filed. See Allison v. Commissioner,T.C. Memo. 1976-248↩.
8. In fact, rights of survivorship have been abolished by statute under many circumstances. Va. Code sec. 55-20↩ (1981).
9. Mrs. Wood did testify that petitioner was her "silent partner," but she did not elaborate upon her understanding of this term other than to explain that she and Mr. Wood were holding the land for petitioner as well as for themselves. 10. The properties clearly are of a like kind. See Estill v. Commissioner,T.C. Memo. 1960-64; Rev. Rul. 79-44, 1979-1 C.B. 265; Rev. Rul. 73-476, 1973-2 C.B. 301↩.
11. The holding of land (as inventory) primarily for sale in the ordinary course of business (which was the status of petitioner's holding of the parcels here--see pages 11-15, infra) is not tantamount to holding land for productive use in petitioner's business. Sec. 1031(a); sec. 1.1031(a)-1(a), Income Tax Regs.↩
12. In analyzing this issue, we examine the five parcels together, because (other than the holding period) there is no evidence that the fifth parcel was any different from the other four. Although the fifth parcel was donated almost 11 months after the other four, petitioner appears to have formed the intent to donate that percel prior to receipt of legal title. The record does not reveal the reason for the delayed gift, and we do not wish to attribute any speculative distinctions to that parcel in the absence of such evidence.↩
13. The facts here thus are very different from those in Maddux Construction Co. v. Commissioner,54 T.C. 1278 (1970), in which we held capital gain to be appropriate where the taxpayer had satisfactorily distinguished between his business (construction of houses for residential purposes on land owned by taxpayer or others) and the instant transaction (purchase of large tract of undeveloped real estate, held for period and sold in bulk for commercial use). 54 T.C. at 1286-1287↩.
14. There is no evidence that any of the parcels acquired from the Corporation were held for investment before Oct. 30, 1973. In fact, the evidence is quite to the contrary, since until Oct. 30, 1973, there was no distinction made between property that was deeded on that date to Cobo and Rollman Corporations and property deeded to petitioner in his own name. Therefore, the Woods and petitioner quite clearly acquired these parcels as part of their respective businesses.↩
15. This case will, therefore, require a computation under Rule 155.↩
16. The first sentence of sec. 274(b)(1) provides: (1) Limitation.--No deduction shall be allowed under section 162 or section 212 for any expense for gifts made directly or indirectly to any individual to the extent that such expense, when added to prior expenses of the taxpayer for gifts made to such individual during the same taxable year, exceeds $25.↩
17. Sec. 274(d) provides: (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. ↩
18. We note that sec. 1.274-5(c)(2)(ii)(b), Income Tax Regs., provides relief from the requirement of written substantiation of business purpose where that purpose is "evident from the surrounding facts and circumstances." While in some circumstances dinner with one's attorney might be presumed to have a business purpose, petitioner's vague testimony concerning "matters" discussed in the course of these dinners leads us to conclude that a business purpose is not evident. Therefore, the normal rule requiring written substantiation must be applied. 19. In Sanford v. Commissioner,50 T.C. 823 (1968), affd. 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969), we noted that the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), is inapplicable in situations where sec. 274↩ applies.
20. This item apparently was included under the category of promotional expense on petitioner's return, although during trial petitioner's counsel argued that it was more properly characterized as a business expense.↩
21. Sec. 262 provides: Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. 22. See Vartanian v. Commissioner,T.C. Memo. 1977-110↩.