LAND DYNAMICS (formerly known as Bonanza Enterprises), successor-in-interest to BONADELLE RANCHOS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Land Dynamics v. Commissioner
Docket No. 2146-76.
United States Tax Court
T.C. Memo 1978-259; 1978 Tax Ct. Memo LEXIS 257; 37 T.C.M. (CCH) 1119; T.C.M. (RIA) 78259; July 12, 1978, Filed *257 Held, the exchange of an orange grove for grazing land does not qualify under sec. 1031 as petitioner, a dealer in realty, has not proven that the grazing land was not held primarily for sale. James M. Bell, for the petitioner. Warren N. Nemiroff, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined deficiencies in, and additions to, under section 6653(a), I.R.C. 1954, petitioner's corporate income taxes as follows: Addition to Tax Tax Year Ended
Tax
under Sec. 6653(a)
February 28, 1969
$ 23,531
$ 1,177
February 28, 1970
52,222
2,611
February 28, 1971
39,047
1,952
March 1, 1971 -
July 31, 1971
4,101
205
$ 118,901
$ 5,945 Due to concessions [1] *258 by the parties the remaining issue for decision is whether petitioner's exchange in 1969 of realty for realty qualifies as a transaction entitled to nonrecognition of gain under section 1031. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. At the time of filing the petition herein petitioner, Land Dynamics, formerly known as Bonanza Enterprises and successor-in-interest to Bonadelle Enterprises, Bonadelle Ranchos, J.P.B. Homes, Bonadelle Land Company, J.P.B. Land Company, Bonadelle Construction Company, P. and J. Construction Company, Bonadelle Land Sales, Bonadelle Development Company and Bonadelle Homes, Inc., pursuant to a reorganization effective *259 September 1970, was organized under the laws of the State of California with its principal place of business in Fresno, California. During the taxable years ended February, 1969, February, 1970, February, 1971 and July 31, 1971, Bonadelle Ranchos was a California corporation and filed corporate income tax returns for said years. It was engaged in the business of real estate development and sales. In the calendar year 1966, Bonadelle Ranchos acquired 60 acres of realty (hereinafter referred to as the Arbelbide parcel) in Fresno, California. At date of acquisition said parcel was raw land and up to and including its fiscal year ended February 28, 1970, Bonadelle Ranchos developed the parcel into an orange grove and harvested a single crop from said grove. During the fiscal year ended February 28, 1970, Bonadelle Ranchos exchanged the Arbelbide property (which now consisted of orange trees, building and pipeline) for property consisting of 1,315 acres of grassland in the County of Tulare, State of California (hereinafter referred to as the Tulare property). Petitioner did not subdivide either the Arbelbide or the Tulare properties. The Tulare property was sold, in its entirety, *260 to one purchaser during the taxable year ended December 31, 1971. Additionally, such property was not offered for sale until its actual sale in 1971. The exchange of the Arbelbide property for the Tulare property was entered on the books and records of Bonadelle Ranchos as a tax-free exchange at the time that the transaction occurred. Respondent in his notice of deficiency, dated December 12, 1975, determined that the exchange did not qualify as a nontaxable exchange under section 1031(a) inasmuch as there was "an exchange of investment property for property held primarily for sale in a trade or business." Respondent then allocated the $ 110,721 gain realized on the exchange between section 1245 gain ($ 6,827) and section 1231 gain ($ 103,894). OPINION The parties agree upon the law applicable herein, to wit: Under section 1031(a) [2] *262 no gain or loss is recognized when property held for the productive use in a trade or business or for investment, is exchanged solely for property of a like kind which is also held either for the productive use in a trade or business or for investment. If, however, the property received in the exchange includes money or property other than property *261 permitted under subsection (a) then gain is recognized to the extent of the sum of money and the fair market value of such other property. Section 1031(b). [3] Property not qualifying under subsection (a) includes "property held primarily for sale." Moreover there is no requirement that the property be held primarily "'for sale to customers in the ordinary course of'" a trade or business carried on by taxpayer, but only that the property be "held primarily for sale." Woodbury v. Commissioner,49 T.C. 180, 197 (1967); 3 Mertens Law of Federal Income Taxation, sec. 20.26, p. 96 (1972 rev.). Finally, the parties agree that the term "primarily" means "of first importance, or principally." See Malat v. Riddell,383 U.S. 569, 572 (1966). As previously stated respondent in his notice of deficiency determined the exchange did not qualify under section 1031 inasmuch as there was an exchange of investment property (Arbelbide) for property held primarily for sale in a trade or business (Tulare). Consequently, the issue is narrowly drawn and our focus is solely upon the characterization of the Tulare property received and held by petitioner. Moreover as previously stated petitioner is in the business of real estate development and *263 sales. A preliminary prospectus prepared in 1972 for the sale of additional shares of petitioner's common stock stated, particularly, that petitioner is primarily engaged in the business of (1) on-site construction and sale of moderately priced single family homes; (2) the acquisition, subdivision and sale of land for recreational and second-home sites; (3) the acquisition, development and sale of agriculture properties; and (4) the purchase and sale of residential and commercial land. In connection with the recreational land developments parcels of land, customarily mountain or foothill properties, are acquired by petitioner. If because of the topography or other reasons the land is not suitable for recreational or second homesite subdivisions, it is sold in bulk. The Tulare property sold prior to the prospective date, was one of these bulk sales sold prior to December 31, 1971. Additionally the prospectus provided that petitioner: [Acquires] land for use in its real estate programs and not for investment. Its land acquisition policy is to acquire sites which are suitable for residential development within a period of three to five years, sites which are suitable for recreational *264 development within two to three years, and sites which are suitable for agricultural development and sale within one to three years. Therefore based on the above respondent contends on brief that, if one assumes petitioner acquired Tulare without knowledge that it could not be subdivided, then the primary purpose for acquisition was subdivision for sale. Alternatively, if petitioner had knowledge that the property could not be subdivided, then the property was acquired solely for bulk sale. In either event, the acquisition of Tulare falls outside section 1031(a). Petitioner replies that there are exceptions to its general policy of not acquiring land for investment purposes. It relies upon the testimony of its officer and general counsel in support thereof. The general counsel was employed by petitioner in November of 1971 and was involved in the preparation, accuracy and filing of the prospectus. However, we note that he had no personal knowledge of the Arbelbide-Tulare exchange and testified that he didn't "know whether it was an exception or not" to the corporation's policy of not acquiring land for investment. Also petitioner contends that, if the Tulare property, grazing *265 land, was not suitable for development and sale as recreational land development property, then it could not be held for sale for that purpose, i.e.: it was not part of petitioner's inventory of recreational land.It simply was grassland and was not listed or offered for sale prior to its sale in 1971, two years after its acquisition. We recognize that it is well established that petitioner, a dealer in land, may also acquire and hold real property for investment purposes. Maddux Construction Co. v. Commissioner,54 T.C. 1278, 1286 (1970). "[A] subsequent sale is not conclusive on the question of the primary purpose in acquiring and holding real estate." Municipal Bond Corporation v. Commissioner,382 F.2d 184, 188 (8th Cir. 1967).However the fact that land was held for many years does not establish an intention to hold the property for investment rather than sale. Stockton Harbor Indus. Co. v. Commissioner,216 F.2d 638, 655 (9th Cir. 1954), affg. a Memorandum Opinion of this Court, cert. denied 349 U.S. 904 (1955). In short, petitioner has been active as a dealer in the purchase and sale of realty. It has the burden of proving that "when * * *[it] dealt with the parcels of land *266 [involved herein] * * * [it] was wearing the hat of an investor rather than that of a dealer." Pritchett v. Commissioner,63 T.C. 149, 164 (1974). Herein petitioner has not submitted one iota of evidence to prove its investor status in connection with its holding of the Tulare property. Based upon the record presented we only can draw negative inferences and conclude that the exchange does not qualify under section 1031(a).
Decision will be entered under Rule 155.
Footnotes
1. Petitioner concedes it is not entitled to the following claimed deductions: Item
TAX YEAR ENDED
2/28/69
2/28/70
2/28/71
3/1/71 - 7/31/71
Travel & Entertainment
$ 4,013
$ 1,140
$ 1,736 expenses
Commission Expense
500
76,100
Escrow Expense
1,007
Property Tax Expense
4,113
$ 7,052
Professional Services
200
Depreciation--Jeep
287
Respondent concedes petitioner's entitlement to the following deductions: Professional Fees
$ 1,050
Commission Expense
3,500
Officers' Bonus
36,000
$ 35,000
Miscellaneous Expense
1,000
Additionally petitioner concedes that under sec. 6653(a) there are additions to tax in the amounts of $ 106, $ 1,952, and $ 181 for the taxable years ended February 28, 1969, February 28, 1971 and July 31, 1971. Moreover, petitioner also concedes that for the taxable year ended February 28, 1970, under sec. 6653(a)↩, and upon decision of the remaining issue in this case, there will be an addition to tax in the rquisite amount.
2. Sec. 1031. EXCHANGE OF PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT. (a) Nonrecognition of Gain or Loss From Exchanges Solely in Kind. - No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment. 3. Sec. 1031(b). Gain From Exchanges Not Solely in Kind.-If an exchange would be within the provisions of subsection (a), of section 1035(a), of section 1036(a), or of section 1037(a), if it were not for the fact that the property received in exchange consists not only of property permitted by such provisions to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.↩