T.C. Memo. 2010-64

UNITED STATES TAX COURT

TONY R. AND DENELDA SIMS GOOLSBY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1276-07.                    Filed April 1, 2010.

Tony R. Goolsby and Denelda Sims Goolsby, pro sese.

<u>James H. Brunson III</u> and Peter E. Morgan (specially recognized), for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined the following deficiencies in petitioners' Federal income tax and penalties for the following tax years:

| Year | Deficiency | Accuracy-related penalty sec. 6662(a) |
|------|-----------|---------------------------------------|
| 2003 | $118,887 | $23,777 |
| 2004 | 10,344 | 2,069 |

The following issues remain for our decision:[1]  (1) Whether, pursuant to section 1031(a), petitioners may defer recognition of the gain realized upon the sale of certain real property for tax year 2003; (2) whether losses from petitioners' rental properties constitute losses from a passive activity pursuant to section 469 for tax years 2003 and 2004; and (3) whether petitioners are liable for the accuracy-related penalty pursuant to section 6662 for tax years 2003 and 2004.[2]

## FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated. The stipulations of fact are incorporated in this opinion by reference and are found accordingly.

At the time the petition was filed, petitioners resided in Fayetteville, Georgia.

---

[1]Respondent concedes that the Wilshire property, described below, was exchanged in a like-kind exchange pursuant to sec. 1031 for tax year 2003; however, respondent disputes how much gain should be recognized.

[2]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code as amended and in effect for the years in issue.  Amounts are rounded to the nearest dollar.

Petitioners are husband and wife.  Petitioners filed joint Federal income tax returns for the tax years in issue.

Petitioner Tony R. Goolsby (Mr. Goolsby) works for Oracle Corp.  Petitioner Denelda Sims Goolsby (Mrs. Goolsby) cares for petitioners' children and manages petitioners' rental properties. Petitioners owned the property in which they lived at 25338 Gold Hills Drive, Castro Valley, California (Gold Hills property) before February 2003.

On October 31, 1990, Mr. Goolsby purchased real property at 4177 Wilshire Boulevard, Oakland, California (Wilshire property) for $270,000 as his sole and separate property.  The Wilshire property is a single-family residence owned by Mr. Goolsby as an investment property.

On October 21, 2002, Mr. Goolsby signed a purchase agreement to purchase 200 Pebble Beach Drive, Fayetteville, Georgia (Pebble Beach property).  The purchase agreement was contingent upon the sale of petitioners' personal residence, the Gold Hills property.

On February 4, 2003, Mr. Goolsby signed a purchase agreement of $605,000 for the sale of the Wilshire property to an unrelated person.  On February 18, 2003, Mr. Goolsby was referred to Investment Property Exchange, Inc. (IPX), a company that arranges like-kind exchanges, in order to conduct a like-kind exchange of the Wilshire property pursuant to section 1031.   Mr. Goolsby informed IPX that he had found a purchaser for the Wilshire

property and wanted to exchange it for the Pebble Beach property and a four-unit residential building at 185 Meadowbrook Court, Fayetteville, Georgia (Meadowbrook property). The sale of the Wilshire property closed on March 5, 2003.

On February 11, 2003, petitioners sold the Gold Hills property to an unrelated person and began living with their in-laws at 130 Baywatch Circle, Fayetteville, Georgia.

Mr. Goolsby transferred the deed from the Wilshire property to the purchaser through an escrow agent, Old Republic Title Co. After the close of the sale of the Wilshire property, Old Republic Title Co. placed the net proceeds from the sale of $188,281 into an account held by IPX on behalf of Mr. Goolsby.[3]

On March 7, 2003, Mr. Goolsby purchased the Pebble Beach property from unrelated persons for $460,000. Upon purchase of the Pebble Beach property, neither party assumed liabilities of the other. To purchase the Pebble Beach property, Mr. Goolsby paid cash, applied $136,000 of the sale proceeds of the Wilshire property, and obtained a loan of $322,700.

On March 7, 2003, Mr. Goolsby signed a purchase agreement for the Meadowbrook property for the purchase price of $280,000. Upon purchase of the Meadowbrook property, Mr. Goolsby did not

---

[3]Proceeds from the sale of the Wilshire property were used to satisfy mortgages, loans, and other liabilities listed on the settlement statement. The net amount remaining after all of those liabilities was $188,281.

assume liabilities of the seller.  On April 15, 2003, Mr. Goolsby closed the purchase and sale of the Meadowbrook property.  To purchase the Meadowbrook property, Mr. Goolsby paid cash, applied $47,066 of the proceeds of the sale of the Wilshire property, and obtained a loan of $210,000.[4]

Petitioners attempted to rent the Pebble Beach property by placing an advertisement in the Fayetteville Neighbor, a neighborhood newspaper.[5]  However, petitioners failed to inquire whether their neighborhood association would allow them to rent the property.  During May of 2003, petitioners moved into the Pebble Beach property after failing for 2 months to rent it.

Petitioners owned several rental properties (rental properties) for which they claimed losses of $109,919 and $31,857 on their Federal income tax returns for tax years 2003 and 2004, respectively.  Mrs. Goolsby served as the primary caretaker of petitioners' rental properties.  Petitioners failed to keep contemporaneous logs of Mrs. Goolsby's time spent managing the rental properties.  Petitioners created "activity" logs after their Federal income tax returns for 2003 and 2004 were examined by respondent.  For tax year 2003, Mrs. Goolsby initially claimed to have spent 785 hours managing petitioners' rental properties.

---

[4]Both parties concede that the Meadowbrook property is a rental property held for investment purposes by Mr. Goolsby.

[5]The advertisement was placed in the Fayetteville Neighbor on Mar. 10, 2003, and remained in place for a few months.

However, petitioners created another 2003 activity log before trial because of errors they perceived in the "original" 2003 activity log. In the newly created and reconstructed 2003 activity log (2003 activity log) Mrs. Goolsby claims to have spent 799 hours managing petitioners' rental properties. For tax year 2004, Mrs. Goolsby claims to have spent 716 hours managing petitioners' rental properties.

On January 22, 2007, respondent sent petitioners a notice of deficiency. Petitioners timely filed a petition in this Court for redetermination of the deficiencies.

OPINION

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving it incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[6]

We first address the issue of whether petitioners may defer recognition of gain, pursuant to section 1031(a), from the sale of the Wilshire property. Section 1031(a) provides that no gain or loss shall be recognized on the exchange of property held for productive use in a trade or business or for investment if the property is exchanged solely for property of a like kind that is to be held either for productive use in a trade or business or

_____

[6]Petitioners do not contend that sec. 7491(a) should apply to shift the burden of proof to respondent, nor did they establish that it should apply to the instant case.

for investment.[7]  Under section 1031(d), the basis of property acquired in a section 1031 exchange is the same as the basis of the property exchanged, decreased by any money that the taxpayer receives and increased by any gain that the taxpayer recognizes.

Section 1031 and the regulations thereunder allow for deferred exchanges of property.  Under section 1031(a)(3) and section 1.1031(k)-1(b), Income Tax Regs., however, the property a taxpayer receives in the exchange (replacement property) must be (1) identified within 45 days of the transfer of the property relinquished in the exchange (relinquished property) and (2) received by the earlier of 180 days after the transfer of the relinquished property or the due date (including extensions) of the transferor's tax return for the tax year in which the relinquished property is transferred.

Section 1.1031(k)-1(g)(4), Income Tax Regs., allows a taxpayer to use a qualified intermediary to facilitate a like-kind exchange.  The qualified intermediary is not considered the agent of the taxpayer for purposes of section 1031(a).  Sec. 1.1031(k)-1(g)(4)(i), Income Tax Regs.  The taxpayer's transfer of relinquished property to a qualified intermediary and subsequent receipt of like-kind replacement property from the

---

[7]In an otherwise qualifying like-kind exchange, a taxpayer's realized gain is recognized to the extent the consideration received includes unqualified property (boot).  Sec. 1031(b); sec. 1.1031(a)-1(a)(2), Income Tax Regs.

qualified intermediary is treated as an exchange with the qualified intermediary.  Id.

Petitioner exchanged the Wilshire property for the Meadowbrook property and the Pebble Beach property.[8]  The parties do not question whether the transaction in issue qualifies as an exchange.  Furthermore, the parties agree that the properties were identified and received within the limits prescribed by the Internal Revenue Code and that petitioner properly entered into agreements with IPX, a qualified intermediary.  The parties also agree that the Meadowbrook and Wilshire properties were held for investment.  The controversy, therefore, centers on whether the Pebble Beach property was held for productive use in a trade or business or was held for investment.[9]

A taxpayer's intent to hold a property for productive use in a trade or business or for investment is a question of fact that must be determined at the time of the exchange.  Bolker v.

_____

[8]We note that the amount of gain realized on the exchange of the Wilshire property is unclear.  In the notice of deficiency respondent contends that gain realized is $382,802.  However, in the stipulation of facts, the cost basis of the Wilshire property is $270,000, which indicates a gain realized of $335,000.  We need not decide whether the gain realized on the exchange of the Wilshire property was $335,000 instead of $382,802, because the amount of gain to be recognized under sec. 1031(b) pursuant to our holding infra is less than either of those two figures.

[9]Sec. 1.1031(a)-1(a)(1), Income Tax Regs., allows for a crossover exchange of property held for investment for property held for productive use in a trade or business, or vice-versa, to qualify as a like-kind exchange under sec. 1031.

Commissioner, 81 T.C. 782, 804 (1983), affd. 760 F.2d 1039 (9th Cir. 1985); Click v. Commissioner, 78 T.C. 225, 231 (1982). Taxpayers bear the burden of proving that they had the requisite investment intent. Click v. Commissioner, supra at 231; Regals Realty Co. v. Commissioner, 43 B.T.A. 194, 208 (1940), affd. 127 F.2d 931 (2d Cir. 1942). We have held that investment intent must be the taxpayer's primary motivation for holding the exchanged property in order for the property to qualify as held for investment purposes of section 1031. Moore v. Commissioner, T.C. Memo. 2007-134. The use of property solely as a personal residence is antithetical to its being held for investment. Starker v. United States, 602 F.2d 1341, 1350-1351 (9th Cir. 1979).[10]

_____

[10]Rental property that is occasionally used for personal purposes may qualify as property held for productive use in a trade or business or for investment pursuant to sec. 1031 if certain safe-harbor conditions are met. Rev. Proc. 2008-16, sec. 4, 2008-10 I.R.B. 547, 548, provides that a dwelling unit may qualify for like-kind exchange treatment if it is owned by the taxpayer for at least 24 months immediately before the exchange, and within that 24-month period, in each year before the exchange the taxpayer rents the dwelling unit to another person at a fair market rental value for 14 days or more and the period of personal use does not exceed the greater of 14 days or 10 percent of the number of days the dwelling unit is rented at fair market value. Similarly, a dwelling unit may qualify for like-kind exchange treatment if it is owned by the taxpayer for at least 24 months immediately following the exchange, and within that 24-month period, in each year after the exchange, the taxpayer rents the dwelling unit to another person at a fair market rental value for 14 days or more and the period of personal use does not exceed the greater of 14 days or 10 percent of the number of days the dwelling unit is rented at fair market value. The safe
(continued...)

We are unpersuaded that petitioners held the Pebble Beach property for investment or for productive use in a trade or business at the time of the exchange. Petitioners moved into the Pebble Beach property within 2 months after they acquired it, but the move was not merely temporary until renters could be found while petitioners lived in the Pebble Beach property. Mr. Goolsby also made the purchase of the Pebble Beach property contingent upon the sale of the Gold Hills property, petitioners' former personal residence in California. Additionally, Mr. Goolsby's interactions with IPX, the qualified intermediary, are further evidence of a lack of investment intent at the time of the exchange. Before purchasing the Pebble Beach property, Mr. Goolsby sought advice from IPX regarding whether petitioners could move into the property if renters could not be found. Thus, before the exchange petitioners were contemplating the use of the Pebble Beach property as a personal residence. Moreover, petitioners began preparations to finish the basement of the Pebble Beach property, having a builder obtain permits for the construction, within 2 weeks of purchasing the property. The foregoing evidence persuades us that petitioners lacked the requisite intent to hold the Pebble Beach property for investment

---

[10](...continued)
harbor applies only to exchanges that occur after Mar. 10, 2008. However, the Pebble Beach property was never rented. Therefore, the safe harbor is inapplicable.

or for productive use in a trade or business at the time of the exchange.

Attempts to rent the Pebble Beach property also fail to persuade us that petitioners held the Pebble Beach property for investment or for productive use in a trade or business at the time of the exchange. Mr. Goolsby acknowledged that, before the exchange, he failed to research rental opportunities in the area of the Pebble Beach property and failed to research whether the covenants of the homeowners association would allow for the rental of the Pebble Beach property. Moreover, the efforts to rent the Pebble Beach property were minimal. Petitioners merely placed an advertisement in a neighborhood newspaper for a few months. No further efforts were made to gain more exposure for the Pebble Beach property.

Petitioners' contentions that they held the Pebble Beach property for investment or for productive use in a trade or business at the time of the exchange are similarly unpersuasive. They contend that the purchase of the Pebble Beach property was not extravagant when compared to the costs of California properties. Petitioners' contention lacks merit because the relative values of the Wilshire property and the Pebble Beach property are irrelevant to the determination of investment intent or productive use in a trade or business. Petitioners also argue, as evidence of their intent not to reside at the Pebble

Beach property, that they lived with their in-laws upon their move to Georgia. Petitioners' argument is not persuasive. On the basis of the record, we conclude that their efforts to rent the Pebble Beach property were not substantial.

In sum, we conclude that petitioners have failed to meet their burden of proving that at the time of the exchange their primary purpose in holding the Pebble Beach property was for investment or for productive use in a trade or business. Consequently, we hold that the Pebble Beach property is other property received in the exchange pursuant to section 1031(b), and petitioners must therefore recognize gain to the extent of the fair market value of the Pebble Beach property received. See sec. 1031(b). Accordingly, the excess of the proceeds of the sale of the Wilshire property over the Meadowbrook property purchase price represents other property received in the exchange and, therefore, is included in petitioners' gross income for their 2003 tax year.

We next address whether losses from petitioners' rental properties constitute passive activity losses for their 2003 and 2004 tax years. Petitioners contend that Mrs. Goolsby actively and materially participated in the rental real estate business and that they, therefore, are entitled to deduct the losses of that business from their gross income. Respondent contends that Mrs. Goolsby's rental activity is per se a passive activity

because she failed to meet the 750 hour requirement pursuant to section 469(c)(7).[11]

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving their entitlement to the deductions claimed.  Sec. 6001; <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).  Taxpayers are allowed deductions for most business and investment expenses under sections 162 and 212; however, section 469 generally disallows any passive activity loss for the tax year.  A passive activity loss is defined as the excess of the aggregate losses from all passive activities for that year over the aggregate income from all passive activities for such year.  Sec. 469(d)(1).  A passive activity is any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1).  Rental activity generally is treated as per se passive regardless of whether the taxpayer materially participates.  Sec. 469(c)(2).  Pursuant to section 469(c)(7)(B), the rental activities of a taxpayer in the real property business (real estate professional) are not per se passive under section 469(c)(2), but the general definition of passive activity in section 469(c)(1) is applied to them instead.  Sec. 1.469-9(e)(1), Income Tax Regs.

---

[11]The offset allowed pursuant to sec. 469(i) is not in issue.

Under section 469(c)(7)(B), a taxpayer qualifies as a real estate professional and is not engaged in a passive activity under section 469(c)(2) if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

In the case of a joint return, the foregoing requirements for qualification as a real estate professional are satisfied if, and only if, either spouse separately satisfies the requirements. Sec. 469(c)(7)(B). Thus, if either spouse qualifies as a real estate professional, the rental activities of the real estate professional are not per se passive under section 469(c)(2). Instead, the real estate professional's rental activities would be governed by the passive activity criteria under section 469(c)(1).

Petitioners filed an election to treat all interests in rental real estate as a single rental activity pursuant to section 469(c)(7)(A) and section 1.469-9(g), Income Tax Regs. Accordingly, their compliance with the requirements of section 469(c)(7) is measured by treating all of their interests in rental properties as one real estate trade or business.

Mrs. Goolsby's only work in connection with a trade or business for the years in issue was to manage petitioners' rental properties. Thus, more than one-half of the personal services performed by Mrs. Goolsby during the years in issue were performed for the rental property business. Accordingly, the only dispute is whether Mrs. Goolsby meets the 750 hour requirement.

Evidence that may be used to establish hours of participation is set forth in section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).[12] That regulation provides:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

We have held that the regulations do not allow a postevent "ballpark guesstimate". Bailey v. Commissioner, T.C. Memo. 2001-296.

---

[12]Material participation pursuant to sec. 469(c)(7) has the same meaning as under sec. 1.469-5T, Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988). Sec. 1.469-9(b)(5), Income Tax Regs.

Petitioners offered an "activity log" as proof of Mrs. Goolsby's performance of services. The 2003 activity log was created for purposes of the instant case after petitioners' returns were selected for examination. The 2003 activity log indicates that Mrs. Goolsby spent 799 hours on petitioners' rental properties. However, the 2003 activity log fails to persuade us that Mrs. Goolsby spent more than 750 hours on petitioners' rental properties. Petitioners' 2003 activity log was created years after Mrs. Goolsby's participation in rental activity for the years in issue. Petitioners presented no evidence of contemporaneous records, such as appointment books, calendars, or narrative summaries, that would credibly support the 2003 activity log. Incredibly, the 2003 activity log lists days during which Mrs. Goolsby allegedly logged more than 24 hours of work. The 2003 activity log also includes hours worked on the Pebble Beach property at the time petitioners were using the Pebble Beach property as their principal residence.[13] Additionally, the 2003 activity log was the second log petitioners prepared because they perceived that the first log they created for 2003 would not meet the 750 hour requirement. We conclude that the 2003 activity log is not credible or

_____

[13]While the actual move-in date is not clear from the record, Mr. Goolsby testified that petitioners moved into the Pebble Beach property by April or May of 2003. Petitioners' 2003 activity log includes hours spent on the Pebble Beach property during May and June of 2003.

persuasive.  Accordingly, we hold that petitioners have not met their burden of proving that Mrs. Goolsby was a real estate professional for the 2003 tax year.  Consequently, the losses from petitioners' rental properties are passive activity losses for their 2003 tax year and, in the absence of any income from passive activities, are not allowable as deductions from the calculation of taxable income.

For petitioners' 2004 tax year, the parties' stipulation and petitioners' evidence indicate that Mrs. Goolsby worked 716 hours with respect to petitioners' rental properties.  Those 716 hours are less than the 750 hours required pursuant to section 469(c)(7)(B)(ii).  Accordingly, we conclude that petitioners have not met their burden of proving that Mrs. Goolsby was a real estate professional for their 2004 tax year.  Consequently, the losses from petitioners' rental properties are passive activity losses for their 2004 tax year and, in the absence of any income from passive activities, are not allowable as deductions from the calculation of taxable income.

Lastly, we turn to the issue of whether petitioners are liable for accuracy-related penalties for their 2003 and 2004 tax years pursuant to section 6662.  Section 7491(c) provides that the Commissioner bears the burden of production with respect to the liability of any individual for additions to tax and penalties.  Once the Commissioner has met his burden of

production, the taxpayer must come forward with evidence sufficient to persuade a Court that the Commissioner's determination is incorrect.  Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Pursuant to section 6662(a) and (b)(1) and (2), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax (1) due to negligence or disregard of rules or regulations or (2) attributable to a substantial understatement of income tax.[14]  A substantial understatement of income tax is defined as an understatement of tax that exceeds the greater of 10 percent of the tax required to be shown on the tax return or $5,000.  Sec. 6662(d)(1)(A).  The understatement is reduced to the extent that the taxpayer has (1) adequately disclosed his or her position and has a reasonable basis for such position or (2) has substantial authority for the tax treatment of the item.  Sec. 6662(d)(2)(B).  In addition, section 6662(c) defines "negligence" as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "disregard" means any careless, reckless, or intentional disregard.

---

[14]"Understatement" means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A).

The accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all of the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good faith reliance on the advice of a professional such as an accountant.  Id.  Furthermore, an honest misunderstanding of fact or law that is reasonable in the light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith.  See Remy v. Commissioner, T.C. Memo. 1997-72.

The record establishes that respondent's burden of production regarding the substantial understatement penalty pursuant to section 6662 has been satisfied.  For their 2003 tax year, petitioners' understatement exceeds both 10 percent of the amount required to be shown on the return (10 percent of $120,148 is $12,015) and $5,000.[15]  For their 2004 tax year, petitioners' understatement of $10,344 exceeds both 10 percent of the amount

---

[15]The amount of gain that we impute to petitioners for 2003 is smaller than the amount of gain that was imputed to them in the notice of deficiency.  Nonetheless, petitioners' deficiency for tax year 2003 exceeds $12,015.

required to be shown on the return (10 percent of $37,267 is $3,727) and $5,000. Petitioners failed to present any evidence or argument on those issues, and therefore, have failed to meet their burden of proof. Accordingly, we hold that petitioners are liable for the accuracy-related penalties determined for their 2003 and 2004 tax years.[16]

Our holdings will require a recalculation of petitioners' itemized deductions, standard deduction, and exemptions for their 2003 and 2004 tax years.

The Court has considered all other arguments made by the parties and, to the extent we have not addressed them herein, we consider them moot, irrelevant, or without merit.

To reflect the foregoing and respondent's concession,

Decision will be entered

under Rule 155.

---

[16]Because we hold petitioners liable for the accuracy-related penalties on account of their substantial understatements of income tax, we do not need to reach respondent's alternative argument that petitioners were negligent or disregarded rules or regulations.